COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| KAREN SCRUGGS SIMMONS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF BRANDON SCRUGGS, | § § § § | No. 08-09-00031-CV Appeal from the |
| Appellant, | § | 336th District Court |
| v. | § | of Grayson County, Texas |
| TEXOMA MEDICAL CENTER, | § | (TC# 08-0264-336) |
| Appellee. | § | |

**O P I N I O N**

Karen Scruggs Simmons, individually and as representative of the Estate of Brandon Scruggs, appeals the trial court's order dismissing her suit, with prejudice, against Texoma Medical Center ("TMC"). We affirm.

**BACKGROUND**

The following facts are taken from Simmons' original and amended petitions. Having overdosed on the antipsychotic drug, Loxapine, Simmons' son, Brandon Scruggs, was admitted to TMC's emergency room and sent to an exam room.. There, Scruggs, who weighed 380 pounds and suffered from schizophrenia, was agitated, "yell[ed] out" at various individuals, and repeatedly attempted to get out of bed. Consequently, a physician ordered him to be placed in soft restraints at his arms and ankles, as an activated charcoal treatment was administered for the drug overdose.[1] When the charcoal treatment finished, Scruggs broke the soft restraints and got out of bed. The

---

[1] According to WebMD, charcoal treatments are administered to bind the drugs and keep them in the stomach and intestines to reduce the amount absorbed into the blood. *See Drug Overdose Treatment*, available at http://firstaid.webmd.com/drug-overdose-treatment (reviewed by Gelfand, Jonathan, M.D., on Apr. 28, 2010). The charcoaled-bound drugs are then expelled in the stool. *Id*.

emergency room staff subdued Scruggs and pinned him to the floor. There, an unidentified member of the staff placed a knee on the back of Scruggs' neck. While pinned to the floor, Scruggs stopped breathing. Attempts were made to resuscitate Scruggs, but they were unsuccessful.

*Procedural History*

On February 5, 2008, Simmons filed suit against TMC, alleging that it was responsible for the death of her son. Simmons' original petition alleged that her injuries and damages were caused by the hospital's negligence "in failing to train, select and retain staff and or independent contractors who associated with [Scruggs'] treatment while he was a patient . . . ." She further alleged gross negligence and assault based on the same facts and theories. Based on her causes of action, she requested the suit to be governed by a Level 2 discovery control plan.

Along with her petition, Simmons served a set of interrogatories, notice of deposition, and requests for production. TMC provided Scruggs' medical records and other information relevant to his health care, but on March 31, 2008, the hospital objected to providing its policies and procedures, claiming that discovery of those documents was stayed under Section 74.351(s) of the Texas Civil Practices and Remedies Code as Simmons had not yet served the hospital with an expert report.[2] TMC also filed a motion for a Level 3 discovery control plan as it believed Simmons' causes of action were for medical malpractice.

On June 4, 2008, Simmons filed a motion to compel the production of the hospital's policies and procedures. Attached to the motion was an "expert report" authored by Larry Hampton, who is not a physician or health care provider, nor does he practice health care. Rather, Hampton, having a Bachelor of Arts degree in Education, owns Satori Learning Designs, Inc., and is "engaged full

---

[2] For health care liability claims, Section 74.351(s) stays discovery of certain documents until an expert report is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s) (Vernon Supp. 2010).

time in the field of restraint and management of aggressive or unruly individuals, including the training and instruction of others, as well as the development of progressive theory in the field." Seemingly recognizing that Hampton was unqualified to render an expert report for a health care liability claim, Simmons also requested, in her motion to compel, an extension of time to present TMC "with a sufficient expert report as authorized by" the medical liability statutes. According to Simmons, she could not serve a compliant expert report until she received TMC's policies and procedures.

In response, TMC filed a motion to dismiss on June 20, 2008, alleging that Simmons' causes of action were health care liability claims and that dismissal was mandatory as Simmons' expert report, being authored by an unqualified expert, was no report at all within the meaning of the statute, and therefore, she had failed to serve the statutorily required expert report within 120 days following the filing of her original petition. The hospital's prayer asked that "this matter" be dismissed with prejudice.

Simmons did not respond to the motion to dismiss, but she did file an amended petition. In it, she added a patient's bill of rights claim, asserting that the hospital failed to provide considerate and respectful care, failed to provide a humane treatment environment, and failed to provide appropriate treatment. She also alleged negligent undertaking, that is, that the hospital staff, in rendering services to Scruggs, failed to exercise reasonable care in restraining him for his protection. TMC did not amend its motion to dismiss to address these claims.

On September 3, 2008, the trial court held a hearing on the motion to compel, motion for extension, and motion to dismiss. There, TMC argued that Simmons' causes of action were health care liability claims, objected to Hampton's qualifications to render an expert report in such medical malpractice cases, and argued that because no "expert" report was timely served within the meaning

of the statute, its policies and procedures were not subject to discovery and dismissal was mandatory. Simmons retorted that Scruggs' treatment was complete when he was restrained, and therefore, her causes of action were not health care liability claims. However, if the court found her actions to be the latter, Simmons requested an extension of time to serve an expert report so that she could obtain a "medical doctor [to] offer an opinion on causation." The trial court found Simmons' causes of action to be health care liability claims and that the report did not meet the statutory requirements. The trial court then denied Simmons' motion to compel and motion for extension, and dismissed the case.

Subsequently, Simmons filed a motion for new trial and request for clarification of the court's dismissal order. Specifically, Simmons was unsure whether the trial court's order encompassed her patient's bill of rights claim. The trial court entertained a hearing on the matter, and after hearing arguments, it clarified that the patient's bill of rights action was a health care liability claim and was dismissed at the dismissal hearing. On the motion for new trial, the trial court declined to change its previous rulings, but the court did not issue a written order. Consequently, the motion for new trial was overruled by operation of law.

*Issues*

Simmons now appeals raising four issues. In Issue One, Simmons contests the trial court's determination that her causes of action were health care liability claims. And in Issue Two, she alleges that the trial court improperly dismissed her patient's bill of rights claims *sua sponte*. Issue Three alleges violations of discovery, and Issue Four complains of the trial court's failure to grant her extension to serve a compliant expert report. We find no merit in any of the contentions raised.

## HEALTH CARE LIABILITY CLAIMS

Simmons' first issue contends that the trial court erred by characterizing her causes of action

set out in her amended petition as health care liability claims subject to the requirements of Chapter 74 of the Civil Practices and Remedies Code. According to Simmons, Scruggs' injuries were not related to any medical care he received as a patient of TMC. Rather, she argues that the staff's actions of tackling Scruggs and restraining him on the floor were related to general safety procedures, which occurred after Scruggs' medical care was completed. Therefore, Simmons concludes that her causes of action fell beyond the scope of Chapter 74 as the staff's conduct was unrelated to any care pertaining to the medical problems that Scruggs was admitted to the hospital for. We disagree.

*Applicable Law*

A cause of action against a health care provider, whether sounding in tort or contract, is a Chapter 74 health care liability claim if it is based on a claimed departure from an accepted standard of medical care, health care, safety, or professional or administrative services. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2005); *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005); *Wilson N. Jones Memorial Hospital v. Ammons*, 266 S.W.3d 51, 55 (Tex. App. – Dallas 2008, pet. filed); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App. – El Paso 2006, no pet.). Moreover, if the act or omission complained of is an inseparable part of the rendition of medical services, the cause of action is a health care liability claim as it has alleged a departure from accepted standards of medical or health care. *Diversicare*, 185 S.W.3d at 848; *Ammons*, 266 S.W.3d at 57; *Kidd*, 214 S.W.3d at 32-33.

In determining whether a cause of action is a health care liability claim under Chapter 74, we employ a *de novo* standard of review. *See Ammons*, 266 S.W.3d at 55; *Kidd*, 214 S.W.3d at 32 (cases noting that although appellate courts ordinarily review the denial of a motion to dismiss filed pursuant to Section 74.351 under an abuse of discretion standard, a *de novo* standard is applied in

determining whether a causes of action is a health care liability claim for purposes of applying Chapter 74).  In so doing, we focus on the nature and essence of the claims rather than the way they were pleaded.  *Diversicare*, 185 S.W.3d at 848; *Ammons*, 266 S.W.3d at 57; *Kidd*, 214 S.W.3d at 33.  Indeed, a plaintiff cannot avoid the requirements of Chapter 74 by simply recasting a health care liability claim as a different cause of action through artful pleading.  *Diversicare*, 185 S.W.3d at 851; *Ammons*, 266 S.W.3d at 57.  Therefore, we look to the alleged wrongful conduct as well as the duties allegedly breached.  *Ammons*, 266 S.W.3d at 57; *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex. App. – Dallas 2007, pet. denied).  We also consider whether an expert is necessary to show a breach of the applicable standard of care even though such testimony may not be necessary to prevail at trial.  *Ammons*, 266 S.W.3d at 57; *Kidd*, 214 S.W.3d at 33.  As the Supreme Court recently stated, "[w]hether the underlying claim involves a health care provider's negligent act or omission, or the patient's exposure to some other safety risk, the relationship between the injury causing event and the patient's care or treatment must be substantial and direct for the cause of action to be a health care liability claim . . . ."  *Marks v. St. Luke's Episcopal Hosp*., 319 S.W.3d 658, 664 (Tex. 2010).

*The Causes of Action were Health Care Liability Claims*

The amended petition reflects that Scruggs was admitted to the hospital for overdosing on Loxapine, a drug used to treat his schizophrenia.  The amended petition further alleges that because Scruggs was agitated, "yelling out" at various individuals, and repeatedly attempting to get out of bed, a physician ordered him to be placed in soft restraints as he received a charcoal treatment for the drug overdose.  After the treatment was administered, Scruggs broke the soft restraints and got out of bed.  It was then that the hospital staff attempted to restrain Scruggs and pinned him to the floor.

We have searched the record and cannot find anything to indicate that Scruggs' medical care

was complete when the alleged improper restraint occurred. Although Simmons alleges that Scruggs' treatment was finished, we note that the doctor had not yet ordered Scruggs' release from the soft restraints. Rather, Scruggs broke free. There exists any number of reasons why his care may not have yet been complete at that time – the charcoal may have still needed to absorb the poison, another treatment may have been necessary, or the doctor may have simply been waiting for Scruggs' agitated state to weaken. Nothing in the record suggests that professional supervision, monitoring, and other medical judgments were complete. Accordingly, we believe that the complained-of actions by the staff occurred while Scruggs was still receiving medical care and involved the exercise of professional medical judgment. *See Diversicare*, 185 S.W.3d at 850 (stating that some patients require enhanced supervision and additional staff or restraints and that the nature and intensity of care and treatment, including professional supervision, monitoring, assessment, quantities and types of medication, and other medical treatment are judgments made by professionals trained and experienced in treating and caring for patients in health care facilities).

Moreover, we note that a reading of Simmons' causes of action invoke health care liability claims. The amended petition alleges that because the hospital staff improperly restrained Scruggs, the hospital failed to provide appropriate treatment in the least restrictive appropriate setting, and that the hospital staff, in rendering services for Scruggs, owed a duty of care, failed to take appropriate precautionary measures and exercise reasonable care, and acted in the scope of their employment, within their general authority, and in furtherance of the hospital's business "for the accomplishment of the object for which they were hired." Undoubtedly, nurses and physicians, i.e., hospital staff, are hired by hospitals to administer medical care. As Simmons complains of the staff's rendering of services to Scruggs while acting in the scope of their employment and for the accomplishment of the object for which they were hired, we find that even a liberal reading of the

pleadings leads to the conclusion that Scruggs' causes of action result from receiving medical care. *See Parker v. CCS/Meadow Pines, Inc.*, 166 S.W.3d 509, 513 (Tex. App. – Texarkana 2005, no pet.) (finding petition alleging that hospital employees improperly restrained victim, failed to have sufficient staff, failed to properly train staff, violated victim's rights as set out in the Patient's Bill of Rights, failed to abide by the Hospital's "own standards in the care and treatment" of victim, failed to exercise "due care and caution" as to victim, and failed to timely and appropriately treat victim's injuries were health care liability claims).

Finally, as the courts have indicated, because the causes of action alleged concern the hospital staff's actions in restraining a patient while receiving medical care, Simmons' claims will certainly require expert opinions to establish the medical and health care standards for a hospital's use of restraint on a very large, agitated, psychiatric patient treated for a drug overdose in the emergency room, whether the hospital staff breached those standards, and whether any improper conduct by the hospital staff in restraining, assessing, or monitoring Scruggs was the proximate cause of his injuries and death. *See Diversicare*, 185 S.W.3d at 851 (stating that expert testimony is needed for whether physical restraint is required to prevent assaults by a nursing home resident); *Ammons*, 266 S.W.3d at 64 (stating that the decision as to how and where to hold psychiatric patient at hospital was a health care decision); *Kidd*, 214 S.W.3d at 34 (stating expert testimony would be required to determine the ability of patients on certain medications to protect themselves from assaultive conduct or whether a potential target of an attack in a health care facility should be better protected and by what means).

Therefore, after considering the essence of Simmons' causes of action, we conclude that the

trial court properly determined that all of Simmons' claims were health care liability claims.[3] *See Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 140-41 (Tex. App. – Eastland 2006, no pet.) (claims of patient who was slammed against wall as nurses subdued another patient were health care liability claims as they related to health care provided to claimant); *Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 328 (Tex. App. – San Antonio 2006, pet. denied) (patient injured in altercation with other patient). As such, Simmons' first issue is overruled.

## EXPERT REPORT

We next turn to Simmons' fourth issue, which challenges the trial court's denial of her requested extension to serve a compliant expert report. According to Simmons, since she served a report, albeit deficient, she met the statutory requirements to be entitled to a thirty-day extension to cure the deficiency. Thus, Simmons asks us to remand the case to allow a thirty-day extension for Simmons to serve a compliant expert report.

### *Applicable Law*

Section 74.351(a) requires the health care liability claimant to "serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted" not later than the 120th day after the filing of the original petition. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the claimant serves that expert report within the 120-day time period but elements of

---

[3] We find the cases cited by Simmons to be distinguishable. The restraint at issue in *Bridges v. Robinson*, 20 S.W.3d 104 (Tex. App. – Houston [14th Dist.] 2000, no pet.), *overruled, in part, on other grounds by Telhorster v. Tennell*, 92 S.W.3d 457 (Tex. 2002), did not occur in a medical setting but in a department store, involving store employees and security officers, all of whom were non-medical personnel. None of the issues in the case considered whether the claims alleged were health care liability claims. *Id*. In *Omaha Healthcare Center, L.L.C. v. Johnson*, 246 S.W.3d 278 (Tex. App. – Texarkana 2008, pet. filed), the court concluded that the nature of the alleged claim, that is, wrongful death by a poisonous spider bite, was not a health care liability claim as the cause of action did not stem from the nursing home's treatment or failure to treat the patient but rather from safety that was unrelated to health care, i.e., eradicating spiders from its premises. *Id*. at 287.

the report are found deficient, the trial court may grant one thirty-day extension to cure the deficiencies in the report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). The term "may" as used in subsection (c) vests the trial court with discretion to grant the extension. *Ogletree v. Matthews*, 262 S.W.3d 316, 320-21 (Tex. 2007); *Bosch v. Wilbarger Gen. Hosp.*, 223 S.W.3d 460, 465 (Tex. App. – Amarillo 2006, pet denied); *Hardy v. Marsh*, 170 S.W.3d 865, 870-71 (Tex. App. – Texarkana 2005, no pet.). When a trial court's decision is discretionary, we must give deference and wide latitude to that decision, reversing only on a showing of a clear abuse of discretion. *Hardy*, 170 S.W.3d at 871.

### No Good Faith

Here, TMC filed objections to the expert report, claiming that it was not a good faith effort to comply with the requirements of an expert report as Larry Hampton was not a qualified expert. The trial court agreed with TMC's assessment, and we find no abuse of discretion in the trial court's decision to deny the requested extension when Simmons failed to put forth a good faith effort in serving a compliant report.

A trial court may grant a motion challenging the adequacy of an expert report only if it appears, after hearing, that the report does not constitute a good faith effort to comply with the definition of an expert report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l). An "expert report" is defined as "a written report by *an expert* that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (emphasis added). In order for a document to be considered an "expert report," the document itself must illustrate that the person rendering the opinion therein is

a qualified expert. *See In re Samonte*, 163 S.W.3d 229, 234-35 (Tex. App. – El Paso 2005, orig. proceeding); *Hansen v. Starr*, 123 S.W.3d 13, 19 (Tex. App. – Dallas 2003, pet. denied); *Chisholm v. Maron*, 63 S.W.3d 903, 907 (Tex. App. – Amarillo 2001, no pet.). Section 74.351(r)(5) defines an expert as a physician or a person practicing health care in a field of practice involving the same type of care or treatment.[4] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5).

It is undisputed that Larry Hampton is not a licensed, medical physician. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(A), (C), (D), (E), 74.401(a) (requiring that the qualified expert be a physician). Indeed, Hampton's curriculum vitae only reflects that he has a Bachelor of Arts

---

[4] Specifically, the statute provides that an "expert" means:

(A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

(B) with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402;

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

(E) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5). Section 74.401 requires that the expert be a physician in suits involving a health care liability claim against a physician for injury to or death of a patient. *Id*. at § 74.401(a) (Vernon 2005). And Section 74.402 requires that the expert be "practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose." *Id*. at § 74.402(b)(1) (Vernon 2005). "Practicing health care" is defined as either training health care providers in the same field as the defendant health care provider at an accredited educational institution, or serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider. *Id*. at § 74.402(a).

degree in Education and that he is certified as a law-enforcement instructor for youth only in the State of Arkansas. Nor can we conclude that he is a person practicing health care in a field of practice involving the same type of care or treatment. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(B), 74.402(b) (requiring that the qualified expert be practicing health care in the same field as the defendant). Hampton's report states that he is CEO of Satori Learning Designs, Inc., and is "engaged full time in the field of restraint and management of aggressive or unruly individuals . . . ." However, Hampton is certainly not licensed, certified, or registered in the same field as TMC, that is, as a health care provider, nor does he work at an accredited institution, training health care providers in the same field as that practiced by TMC. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(a) (defining "practicing health care" as either training health care providers in the same field as the defendant health care provider at an accredited educational institution, or serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider). Because Hampton does not meet the definition of "expert," Simmons' expert report was not a good faith effort to comply with the statute, and the trial court did not abuse its discretion by denying the requested extension. *See Petty v. Churner*, 310 S.W.3d 131, 135 (Tex. App. – Dallas 2010, no pet.) (report submitted by pharmacist could not be considered as an expert report); *In re Samonte*, 163 S.W.3d at 238 ("Having found that the report as provided does not comply with the statutory requirements, it is, therefore, not a good faith effort to comply."); *Hansen*, 123 S.W.3d at 20 ("Because MacGregor's report does not show that he is qualified as an expert in the area of radiology, the trial court could have concluded the report did not represent a good faith effort to comply with the statutory requirements for an expert report."); *Mimari v. Johnson*, No. 04-06-00454-CV, 2006 WL 3206068, at *2 (Tex. App. – San Antonio Nov.8, 2006, no pet.) (mem. op., not designated for publication) (letter written by plaintiff's attorney was not an

"expert report" as defined by § 74.351).

*Due Diligence*

Moreover, we note that the essence of Simmons' request for an extension was premised on her motion to compel, which complained that her physician experts could not prepare sufficient reports until TMC provided the hospital's policies and procedures. However, Simmons did not file her motions to compel and to request an extension until June 4, 2008, the day Simmons' expert report was due.[5] TMC filed its written objections under Chapter 74 to Simmons' discovery request on March 31, 2008. Thus, the trial court was aware that despite Simmons' claim that she needed the hospital's policies and procedures to prepare sufficient expert reports, she waited more than two months after receiving TMC's objections and responses to her discovery requests to move to compel production of those policies and procedures, and filed her motion to compel on the day her expert report was due. Simmons has not explained why she waited more than two months to move to compel production, leaving no time to prepare an expert report, if the motion to compel was granted, by the 120-day deadline. Accordingly, the trial court could have reasonably concluded that Simmons did not act with due diligence in pursuing the discovery for her experts' needs. This too supports the trial court's discretion to deny the requested extension. *See Bosch*, 223 S.W.3d at 465-66 (no abuse of discretion in denying extension when claimant waited months after objections to expert report to request extension); *Hardy*, 170 S.W.3d at 871 (no abuse of discretion in denying extension when claimant had sufficient time to provide a compliant report).

In short, nothing in the record indicates that the district court acted arbitrarily or unreasonably in exercising its discretion not to allow Simmons a thirty-day extension. After considering

---

[5] The record reflects that Simmons' suit was filed on February 5, 2008. As 2008 was a leap year, our calculation reveals that Simmons' expert report was due on June 4, 2008.

Simmons' lack of good faith effort to comply with the expert report requirements and her failure to diligently compel the requested documents, we find no abuse of discretion in the trial court's failure to grant Simmons' extension. *See Ledesma v. Shashoua*, No. 03-05-00454-CV, 2007 WL 2214650, at *8 (Tex. App. – Austin Aug. 3, 2007, pet. denied) (mem. op., not designated for publication). Issue Four is overruled.

## DISCOVERY VIOLATION

Simmons' third issue contends that should we find that her causes of action are health care liability claims, we should remand the case to permit access to reasonable and necessary discovery as provided by Section 74.351(s). The essence of Simmons' complaint concerns TMC's refusal to provide the hospital's policies and procedures. As Simmons filed a motion to compel the discovery of such documents at trial, and because the trial court ruled on that motion, we interpret Simmons' contention as directed at the trial court's failure to grant her motion to compel.

### Standard of Review

Because trial courts have broad discretion in matters of discovery, we review a trial court's ruling on a motion to compel discovery under an abuse-of-discretion standard. *See Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 172 (Tex. App. – Dallas 2009, no pet.); *Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App. – Houston [14th Dist.] 2005, pet. denied). A trial court's ruling on a motion to compel will be reversed only when the court acts in an arbitrary and unreasonable manner, and without reference to any guiding principles. *See Knapp*, 281 S.W.3d at 172; *Barnett v. County of Dallas*, 175 S.W.3d 919, 924 (Tex. App. – Dallas 2005, no pet.).

### "Expert" Report was Inadequate

Because we believe that Simmons' report was inadequate, and therefore, not served, her discovery requests for the hospital's policies and procedures, were stayed until a report satisfying

the statutory requirements was served, and as such, the trial court did not abuse its discretion in denying the motion to compel. *See In re Lumsden*, 291 S.W.3d 456, 460-61 (Tex. App. – Houston [14th Dist.] 2009, no writ). As noted before, Section 74.351(a) requires the claimant to "serve on each party or the party's attorney one or more expert reports," not later than the 120th day after the filing of the original petition. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If an expert report "has not been served" by the deadline, meaning no report exists, i.e., an absent report, then the trial court must dismiss the claim with respect to that physician or health care provider with prejudice. *Id*. at § 74.351(b). Moreover, if an expert report exists and is found deficient, it still "has not been served" before the statutory deadline. *Id*. at § 74.351(c). However, the trial court maintains discretion, in that instance, to grant one thirty-day extension to cure the deficiency. *Id*.

Section 74.351(s) provides that:

Until a claimant has served *the expert report and curriculum vitae* as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

(2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and

(3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s) (emphasis added). Section 74.351(s) has been interpreted to mean that until an expert report is served, "[d]iscovery of issues such as financial information, insurance and indemnity agreements, corporate organization, and even bylaws, policies, and procedures are outside the scope of the discovery allowed under Section 74.351." Michael S. Hull, et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History Article Part Three: Detailed Analysis of the Medical Liability Reforms*, 36 TEX. TECH L. REV. 169, 208 (2005);

*see also In re Jorden*, 249 S.W.3d 416, 420 (Tex. 2008) (stating that the plain terms of the statute stay all discovery but for the three listed exceptions until the expert report is served). Thus, the question presented is whether Section 74.351(s) stays all discovery, other than the three enumerated exceptions, in a health care liability cause of action until an "adequate" expert report is served. We conclude that it does.

In *Lewis*, the Supreme Court concluded that an expert report is not "served" unless its content comports with the Chapter 74 statutory requisites. *Lewis v. Funderburk*, 253 S.W.3d 204, 207-08 (Tex. 2008). There, the claimant argued that the language "has not been served" must be limited to cases in which there is no expert report at all. *Id*. at 207. However, the Court disagreed, observing that the legislature made it clear in Section 74.351(c) that by utilizing the phrase "an expert report has not been served," followed by the phrase "because elements of the report are found deficient," was a legislative intent to include those cases where an inadequate report had been served. *Id*. at 207-08. Thus, the plain import of *Lewis* is that an expert report has not been served if it is inadequate. *Lumsden*, 291 S.W.3d at 460.

Consistent with *Lewis*, the language found in Section 74.351(s), "until a claimant has served the expert report," must mean that, "until the claimant has served an adequate expert report, all discovery in a health care liability claim, other than the specific enumerated exceptions, is stayed." *Lumsden*, 291 S.W.3d at 460 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s)). Such interpretation furthers the legislature's goal in enacting Chapter 74:

> The Legislature has repeatedly found that traditional rules of litigation create an ongoing crises in the cost and availability of medical care. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 461 (Tex. 2008) (orig. proceeding). To decrease the costs associated with frivolous suits, expert reports are required soon after filing as a means of separating meritorious claims from frivolous or premature claims. *In re Jorden*, 249 S.W.3d 416, 420 (Tex. 2008) (orig. proceeding); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 461 (explaining, to address crises in cost of healthcare,

Legislature requires that health care claims must be supported with expert reports). Therefore, to limit costs until those reports are produced, the 2003 Texas Legislature enacted section 74.351(s) to place strict limits on discovery. *In re Jorden*, 249 S.W.3d at 420. Thus, "when the Legislature enacted section 74.351, it expressly found that the benefits of deposing health care providers *do not* outweigh the burden and expense involved until after an expert report is served." *Id.* at 423 (emphasis in original).

*Lumsden*, 291 S.W.3d at 460-61.

We have already determined that Hampton is not an expert within the meaning of the health care liability statutes. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(A), (C), (D), (E), 74.401(a) (requiring qualified expert to be a physician); TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(B), 74.402(a) (requiring qualified expert to be practicing health care and defining "practicing health care" as either training health care providers in the same field as the defendant health care provider at an accredited educational institution, or serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider). Therefore, the report is inadequate and has not been served. *Lumsden*, 291 S.W.3d at 461. Accordingly, discovery of the hospital's policies and procedures was stayed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s); *In re Jorden*, 249 S.W.3d at 420; Hull, *House Bill 4 and Proposition 12: An Analysis with Legislative History Article Part Three: Detailed Analysis of the Medical Liability Reforms*, 36 TEX. TECH L. REV. at 208. This certainly supports the trial court's decision to deny the motion to compel.

### *Due Diligence*

We also find that Simmons' actions of filing her motion to compel on the day her expert report was due, which was over two months after TMC filed its objections, was sufficient to support the trial court's decision to deny the motion to compel. Simmons acknowledged that she received TMC's objections and responses to her requests for production on March 31, 2008, and that in those

objections and responses, the hospital took the position that her causes of action were health care liability claims governed by Chapter 74 and that Section 75.351(s) stayed her requested discovery pending the serving of an expert report. As noted before, if Simmons needed the policies and procedures for her physician experts to prepare their reports, the trial court could certainly question why she waited two months to compel production, filing the motion on the day her experts' reports were due to be served and thus, leaving no time to prepare the reports, if the motion to compel was granted, by the 120-day deadline. *See Carbonara v. Texas Stadium Corp.*, 244 S.W.3d 651, 659 (Tex. App. – Dallas 2008, no pet.) (finding trial court did not abuse its discretion in denying motion to compel filed more than a year after discovery had run when affidavits attached thereto merely stated that appellant attempted discovery only for two months); *Piazza v. Cinemark, USA, Inc.*, 179 S.W.3d 213, 216 (Tex. App. – Eastland 2005, pet. denied) (finding trial court did not abuse its discretion by denying motion to compel filed two days before summary-judgment hearing); *see also, e.g., Hatteberg v. Hatteberg*, 933 S.W.2d 522, 526-27 (Tex. App. – Houston [1st Dist.] 1994, no writ) (concluding that last minute attempts at discovery does not indicate due diligence and therefore, trial court did not abuse its discretion in failing to grant a continuance); *Dairyland Cty. Mut. Ins. Co. v. Keys*, 568 S.W.2d 457, 460 (Tex. Civ. App. – Tyler 1978, writ ref'd n.r.e.) (waiting until the eleventh hour to issue subpoenas does not constitute due diligence and therefore, trial court did not abuse its discretion in failing to grant a continuance). This too supports the trial court's discretionary decision to deny the motion to compel.

## Relevance

Finally, we note that Simmons did not allege any claims in her amended petition that TMC failed to have, or if they did have, failed to follow those policies and procedures relating to patient restraint. And TMC argued to the trial court that its policies and procedures are only guidelines and

do not set the applicable standards of care for its employee health care providers. As we noted in *Hicks*, "[h]ospital rules do not reflect the community standard of medical care." *See Hicks v. Canessa*, 825 S.W.2d 542, 544 (Tex. App. – El Paso 1992, no pet.); *see also Denton Regional Medical Center v. LaCroix*, 947 S.W.2d 941, 951 (Tex. App. – Fort Worth 1997, writ denied) (hospital's policies and bylaws alone do not determine the governing standard of care). Because Simmons had the burden to prove that TMC's policies and procedures were relevant to the subject matter of the pending action, we cannot say that the trial court acted arbitrarily in denying Simmons' motion to compel.[6] *See* TEX. R. CIV. P. 192.3(b) (providing that only matters relevant to the pending matter are discoverable).

Finding that any one of the reasons listed above supports the trial court's discretionary decision to deny the motion to compel, we discern no abuse of discretion in the trial court's denial of Simmons' requested discovery. Accordingly, Issue Three is overruled.

## *SUA SPONTE* DISMISSAL

We now address Simmons' second issue, which contends that the trial court dismissed her patient's bill of rights claim *sua sponte*. According to Simmons, because the newly pleaded claim was allegedly filed after the motion to dismiss, and because TMC did not amend its motion to dismiss to include the patient's bill of rights claim, the trial court lacked authority to dismiss that claim at the dismissal hearing.[7] Again, we disagree.

---

[6] Our opinion should not be interpreted to say that a hospital's policies and procedures are never discoverable. Rather, we simply emphasize that the trial court, under all the facts and circumstances of this case, did not act without reference to guiding rules and principles when it denied Simmons' motion to compel.

[7] The record is not clear as to whether Simmons filed her amended petition on June 4, 2008, or July 4, 2008, as the clerk's index states that it was July 4, but the stamped date on the pleading states June 4. However, because Simmons' brief states that it was filed on July 4, we will presume that as the filing date in our analysis. Moreover, Simmons does not contend that the trial court lacked authority to dismiss the other newly pleaded claim in her amended petition, that is, her cause of action for negligent undertaking, and therefore, we do not address that issue here.

*Applicable Law*

Although this case concerns a dismissal motion, we find guidance from those cases addressing a party's failure to respond to an amended pleading in the summary-judgment context. There, if the defending party fails to amend or supplement his motion for summary judgment to address claims asserted in a plaintiff's amended pleading, he is generally not entitled to a summary judgment on the plaintiff's entire case, as such a judgment would grant more relief than requested. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001); *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App. – Houston [1st Dist] 2005, no pet.). However, when the amended petition essentially reiterates previously pleaded causes of action, an amended or supplemental motion for summary judgment is not always necessary. *See Rotating Services Industries, Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App. – Houston [1st Dist.] 2007, pet. denied); *Fraud-Tech, Inc. v. Choicepoint, Inc.,* 102 S.W.3d 366, 387 (Tex. App. – Fort Worth 2003, pet. denied). Nor is an amended or supplemental motion required when the grounds asserted in the motion for summary judgment conclusively negated a common element of the previously and newly pleaded claims, or when the motion is broad enough to encompass the newly asserted claims. *See Harris*, 245 S.W.3d at 487 (cataloguing cases).

*Dismissal Motion Covered the New Claim*

Here, TMC's motion to dismiss was premised on the basis that the essence of all of Simmons' causes of action were health care liability claims, and since Hampton was unqualified to author the expert report, the report filed constituted no report at all, and absent a timely served report, dismissal was mandatory. We have already concluded that the causes of action raised in Simmons' original and amended petitions were health care liability claims as the bases of the claims relate to actions by medical staff while in the course of their employment and while the deceased was being

treated. Further, the trial court found that the report constituted no report at all, and having done so, the trial court determined that Simmons failed to file the expert report within the 120-day requirement, thus mandating dismissal.[8]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (stating that a trial court "shall" dismiss a claim when expert reports are not served within 120 days); *Badiga v. Lopez*, 274 S.W.3d 681, 683 (Tex. 2009) (noting that if no report is served, the legislature denied trial courts discretion to deny motions to dismiss) (citing *Ogletree*, 262 S.W.3d at 319-20).

In this regard, TMC's dismissal motion, having alleged that Simmons' actions were health care liability claims and that Simmons failed to serve an expert report as the report served constituted no report at all, was broad enough to encompass the patient's bill of rights claim alleged in the amended petition. For if the causes of action were health care liability claims, Simmons was required to serve the expert report, and absent the serving of such a report, the trial court, as a matter of law, was required to dismiss the case. Consequently, the trial court's dismissal did not grant more relief than requested. *See, e.g., Harris*, 245 S.W.3d at 487 (because Harris established that Rotating Services was not entitled to the proceeds of the policy as a matter of law, Harris' motion for summary judgment was sufficient to defeat Rotating Services' claims that were added in an amended petition, filed after Harris' motion for summary judgment); *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 436-37 (Tex. App. – Houston [14th Dist.] 1999, no pet.) (holding summary judgment was proper even as to claims in an amended petition because the "amended petition merely reiterates the same essential elements in another fashion, and the motion for summary judgment adequately covers these new variations").

---

[8]  Because the statute provides that the claimant must serve the expert report "not later than the 120th day after the date the *original petition* was filed," the time period for serving the expert report was not extended on the filing of the amended petition even though the amended petition alleged a new cause of action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (emphasis added); *Maxwell v. Seifert*, 237 S.W.3d 423, 426 (Tex. App. – Houston [14th Dist.] 2007, pet. denied) (holding that despite filing of amended petition, which added a new claim, plain language of statute required expert report to be served within 120 days of the date original petition was filed).

We note that the issue before us is not whether the report constituted no report at all but whether TMC's arguments asserted in its motion to dismiss were broad enough such that the trial court could, upon agreeing with those arguments, dismiss Simmons' causes of action, including those claims alleged in the amended petition. Nevertheless, we think it important to take this opportunity to address whether the report served was deficient or no report at all, as that debate is increasingly litigated in the trial and appellate courts. Treading lightly through these conflicts, we believe, after having reviewed the cases and analyzing the facts of this case, that Hampton's report was no report at all, and therefore, as a matter of law, the dismissal motion sufficiently encompassed the newly pleaded claim.

In *Ogletree*, the Supreme Court first addressed the no report at all debate. *Ogletree*, 262 S.W.3d at 319-20. There, the question presented was whether a radiologist's report constituted no report at all in a health care liability claim when the applicable standard of care involved a urologist. *Id*. Dr. Ogletree did not challenge whether the report was deficient in any other respects, that is, whether the report failed to cite the applicable standards of care for the treatment in question, the manner in which care rendered by the physician failed to meet the standards, or the causal relationship between that failure and the harm claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). In concluding that the report was merely deficient, the Court noted that because Chapter 74 provides for a discretionary extension, a deficient, "but curable," report does not mandate dismissal whereas the failure to serve any report, an "absent" report, would. *Id*. at 319-21.

In a concurring opinion, Justice Willett was quick to observe that the Court had apparently "limit[ed] the universe of possible reports" to deficient and absent reports. *Ogletree*, 262 S.W.3d at 323 (Willett, J., concurring). He noted that there was a third class of report, albeit a "rare bird," where the claimed report is actually not a report, that is, "a document so utterly lacking that, no

matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." *Id*. at 323. In those instances, Justice Willett opined that a trial court should determine that a report "has not been served" for purposes of Section 74.351(b) and dismiss the claim. *Id*. at 324.

Following *Ogletree*, Justice Willett sighted that rare bird in *Lewis*. There, he wrote, in a concurring opinion, that the initial report served – a "thank-you-for-your-referral letter" – was no report at all under Section 74.351. *Lewis,* 253 S.W.3d at 210-11. However, because the defendant did not timely appeal the "no report issue," the Court was unable to address it. *Id*. at 208, 210.

In *In re Watkins*, 279 S.W.3d 633 (Tex. 2009), the Court was presented with the issue of whether the defendant could challenge, by interlocutory appeal and writ of mandamus, the trial court's decision to grant an extension to serve a compliant report. In passing, the Court noted that "[t]he separate writings join issue again today on the question whether the item served was a deficient report or no report at all." *Id*. at 634. However, resolution of the issue did not matter as "[i]f no report was served, interlocutory appeal was available, so mandamus is unnecessary," and "[i]f the report was merely deficient, then an interlocutory appeal was prohibited, and granting mandamus to review it would subvert the Legislature's limit on such review." *Id*.

In a concurring opinion, Justice Johnson noted that the report served was not a deficient expert report but rather no report at all. *Id*. at 635-36 (Johnson, J., concurring). "While the document is authored by a physician, it does not show that as of the date of the report the author held any opinion as to (1) applicable standards of care for the treatment in question, (2) the manner in which care rendered by the defendant physician failed to meet the standards, or (3) the causal relationship between that failure and the harm claimed." *Id*. at 635. Similarly, Justice Willett filed a concurring opinion agreeing with Justice Johnson that the report was not a statutory expert report at all, but noted that once again the Court could not address the issue for procedural reasons. *Id*. at

638.

Prior to *Lewis* and *Watkins*, we issued our opinion in *Tenet Hospitals, Ltd. v. Gomez*, 276 S.W.3d 9, 11 (Tex. App. – El Paso 2008, no pet.), where three expert reports were served, two by physicians, and one by a nurse. On appeal, the hospital contended that the expert reports constituted no reports at all because the nurse was not qualified to give a report and the physicians' reports failed to mention the hospital in any substantive way, set forth the applicable standard of care as to the hospital, discuss the ways the hospital breached the standard of care, or provide a causal connection between the hospital and the decedent's injuries. *Id.* at 12. After reviewing *Ogletree's* "deficient" and "absent" report categories, we concluded that because reports were served, they were simply deficient. *Id.* Our opinion did not address whether a report could ever be no report at all, nor were we presented with the situation here, that is, where the expert is not associated with the health care industry in any way.

Nor has our transferor court addressed a factually similar issue, that is, where the served expert report is prepared by someone unrelated to the medical field.[9] In *Cook v. Spears*, 275 S.W.3d 577, 581 (Tex. App. – Dallas 2008, no pet.), the reports at issue were authored by orthopedic surgeons, and the claim was filed against a physician's assistant for performing surgery with a surgeon on the claimant's wrong knee. *Id.* at 579, 581. Although asked to do so, the Dallas Court of Appeals declined to create the third category of reports, that is, that a report can be no report at all, but concluded that if even it did, the expert reports served did not fit that category as the reports were merely deficient – they still implicated the "surgical team" and rendered opinions about the standard of care, breach, and causation although they did not discuss the standard of care for a

---

[9] When a case is transferred to our Court, we are required to apply the law of the transferor court if the transferor court's precedent on the issue differs from our own. *See* TEX. R. APP. P. 41.3.

physician's assistant. *Id*. at 581.

Similarly, in *Fagadau v. Wenkstern*, 311 S.W.3d 132, 136 (Tex. App. – Dallas 2010, no pet.), the Dallas Court of Appeals was again asked to recognize the third category of reports. There, the defendant physician appealed the trial court's order denying his motion to dismiss and granting the claimant's motion for extension to file a compliant expert report. *Id*. at 133-34. The original report served was authored by a physician, but it failed to address two of the acts of negligence asserted in the claimant's pleadings although it addressed the remaining causes of action. *Id*. at 134, 136. Thus, the defendant argued that the report was no report at all. *Id*. at 136. In passing, the Dallas Court of Appeals noted that it previously declined to recognize the no report at all in *Cook*, but did not reach the issue as it lacked jurisdiction to consider the trial court's order denying a motion to dismiss and granting an extension to file a compliant report. *Id*. at 136-37.

We have not found any cases where the courts have addressed whether a claimant may serve an expert report prepared by one unrelated in any manner to the health care industry and satisfy the statutory requirements to be entitled to a curable extension. In those cases, we believe that any such "expert" report constitutes no report at all. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A) (defining "health care provider" as "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including (i) a registered nurse; (ii) a dentist; (iii) a podiatrist; (iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; or (vii) a health care institution").

The statutes contemplate that either a physician or one in the practice of health care provide the expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(A), (C), (D), (E), 74.401(a) (requiring qualified expert to be a physician); TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(B), 74.402(a) (requiring qualified expert to be practicing health care and defining

"practicing health care" as either training health care providers in the same field as the defendant health care provider at an accredited educational institution, or serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider). As noted by Justice Willett, a report signed by a plumber in a medical malpractice case constitutes "no report at all" and "merits swift dismissal, no matter how brilliantly he describes how the defendant's departure from accepted standards of care caused the patient's injury." *Ogletree*, 262 S.W.3d at 324 (Willett, J., concurring). To hold otherwise would allow the plaintiff to serve an "expert" report by a child, bus driver, electrician, grocery store clerk, crossing guard, or postal worker to satisfy the statute and cure the "deficiency" later with an extension.[10] That would certainly render meaningless the word "expert" in the statute, which we believe was not the intent of the legislature. Nor would it further the goals of Chapter 74 to deter frivolous suits, reduce excessive frequency and severity of health care liability claims, and decrease the cost of those claims and ensure that awards are rationally related to actual damages. *See* Section 10.11(b) of Acts 2003, 78th Leg., R.S. ch. 204, 2003 Tex. Gen. Laws 847, 884. Because we hold there was no report served at all, dismissal was mandatory.[11] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (stating that a trial court "shall" dismiss a claim when expert reports are not served within 120 days); *Badiga*, 274 S.W.3d at 683 (noting that if no report is served, the legislature denied trial courts discretion to deny motions to dismiss) (citing *Ogletree*, 262 S.W.3d at 319-20).

---

[10] We recognize that the Texas Supreme Court has held that a claimant may serve an expert report authored by a different expert upon receiving a discretionary extension. *See Lewis*, 253 S.W.3d at 208; *Danos v. Rittger*, 253 S.W.3d 215, 215 (Tex. 2008) (per curiam). But once again, the original "expert" reports served in those cases were authored by physicians. *See Lewis*, 235 S.W.3d at 208; *Danos*, 253 S.W.3d at 215.

[11] Our holding should not be construed as saying that an expert report prepared by an unqualified physician or one in the health care field can never constitute a report. Rather, we simply hold that the "expert" must be related to the medical field for the report to constitute a deficient report rather than no report at all. *See Gomez*, 276 S.W.3d at 11 (finding expert report filed by nurse was deficient).

Because the grounds asserted in the motion to dismiss, that is, that Simmons' claims were health care liability claims and the expert report was no report at all, which service of such was necessary to continue the suit, conclusively negated the grounds of the original and newly pleaded claims, or at the very least, was broad enough to encompass the newly asserted claims, we find that TMC was not required to amend its dismissal motion. *See, e.g., Harris*, 245 S.W.3d at 487; *Lampasas*, 988 S.W.2d at 436-37. Accordingly, the trial court properly dismissed Simmons' suit in its entirety. Issue Two is overruled.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

November 30, 2010

Before Chew, C.J., McClure, and Rivera, JJ.