02-10-402-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00402-CV

 

 


 
 
 Baylor All Saints Medical Center
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Pamela Martin and John Martin
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 17th
District Court OF Tarrant COUNTY

----------

 

OPINION

----------

 

I. 
Introduction

          In
one issue, Appellant Baylor All Saints Medical Center asserts that the trial
court erred when it determined that the expert report filed by the Appellees
Pamela and John Martin met the requirements of section 74.351 of the civil
practice and remedies code.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351 (Vernon 2011).  We reverse and remand.

II. 
Factual and Procedural History

          The
Martins sued Baylor for negligence, alleging that Pamela was sexually assaulted
in her hospital room as she recovered from surgery.  In support of their claim,
the Martins served Baylor with Dr. John C. Shershow, M.D.’s expert report and
curriculum vitae.  Baylor objected to the report’s sufficiency, moved to
dismiss the Martins’ claim, and requested attorney’s fees.  The trial court
overruled Baylor’s objections after a hearing and denied Baylor’s motion to
dismiss and request for attorney’s fees.  This appeal followed.

III. 
Expert Report

          Baylor
appeals the trial court’s order overruling its objections that the Martins’
expert witness report does not comply with section 74.351, arguing that the
report failed to adequately set forth the standard of care applicable to Baylor
and how that standard was breached.

A. 
Standard of Review

          We
review a trial court’s denial of a motion to dismiss for an abuse of
discretion.  Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex. 2006); Maris
v. Hendricks, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied);
Ctr. for Neurological Disorders, P.A. v. George, 261 S.W.3d 285, 290–91
(Tex. App.—Fort Worth 2008, pet. denied).  A trial court abuses its discretion
when it acts in an arbitrary or unreasonable manner or without reference to any
guiding rules or principles.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241–42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986). 
Merely because a trial court may decide a matter within its discretion in a
different manner than an appellate court would in a similar circumstance does
not demonstrate that an abuse of discretion has occurred.  Id.  However,
a trial court has no discretion in determining what the law is, or in applying
the law to the facts, and thus “a clear failure by the trial court to analyze
or apply the law correctly will constitute an abuse of discretion.”  Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); Ehrlich
v. Miles, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

B. 
Applicable Law

          Section
74.351 of the civil practice and remedies code, entitled “Expert Report,” provides,


(a) In a health care
liability claim, a claimant shall, not later than the 120th day after the date
the original petition was filed, serve on each party or the party’s attorney
one or more expert reports, . . . 

 

. . . .

 

(c) If an expert
report has not been served within the period specified by Subsection (a)
because elements of the report are found deficient, the court may grant one
30-day extension to the claimant in order to cure the deficiency. . . . 

 

. . . . 

 

(l)  A court
shall grant a motion challenging the adequacy of an expert report only if it
appears to the court, after hearing, that the report does not represent an
objective good faith effort to comply with the definition of an expert report
in Subsection (r)(6).

. . . .

 

(r) In this section:
. . . .

 

(6) “Expert report”
means a written report by an expert that provides a fair summary of the
expert’s opinions as of the date of the report regarding applicable standards
of care, the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between that
failure and the injury, harm, or damages claimed.

 

(s) Until a claimant
has served the expert report and curriculum vitae as required by Subsection
(a), all discovery in a health care liability claim is stayed except for the
acquisition by the claimant of information, including medical or hospital
records or other documents or tangible things, related to the patient’s health
care[.]

 

Tex.
Civ. Prac. & Rem. Code Ann. § 74.351.

          The
purpose of the expert report requirement is to inform the defendant of the
specific conduct the plaintiff has called into question and to provide a basis
for the trial court to conclude that the claims have merit.  Bowie Mem’l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (citing Am. Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex. 2001)). 
When a defendant moves to dismiss a plaintiff’s claims for failure to provide
the required expert report,

The issue for the
trial court is whether “the report” represents a good-faith effort to comply
with the statutory definition of an expert report.  That definition requires,
as to each defendant, a fair summary of the expert’s opinions about the
applicable standard of care, the manner in which the care failed to meet that
standard, and the causal relationship between that failure and the claimed
injury.  Because the statute focuses on what the report discusses, the only
information relevant to the inquiry is within the four corners of the document.

 

Palacios, 46
S.W.3d at 878 (citations omitted). 

          An
expert report “need not marshal all the plaintiff’s proof.”  Id. at
878–79. While the report must do more than simply state the expert’s
conclusions about the standard of care, breach, and causation, to avoid
dismissal “a plaintiff need not present evidence in the report as if it were
actually litigating the merits.  The report can be informal in that the
information in the report does not have to meet the same requirements as the evidence
offered in a summary-judgment proceeding or at trial.”  Id. at 879.

[t]he standard of
care for a hospital is what an ordinarily prudent hospital would do under the
same or similar circumstances.  Identifying the standard of care is critical:
Whether a defendant breached his or her duty to a patient cannot be determined
absent specific information about what the defendant should have done
differently. “While a ‘fair summary’ is something less than a full statement of
the applicable standard of care and how it was breached, even a fair summary
must set out what care was expected, but not given.”

 

Id. at
880 (citations omitted).  Assaults of the type alleged by the Martins are
covered by section 74.351.  See, e.g., Diversicare Gen. Partner, Inc.
v. Rubio, 185 S.W.3d 842, 853, 855 (Tex. 2005) (holding that a patient’s
claim against a nursing home for negligence in failing to provide sufficient
staff and supervision to prevent her sexual assault by another patient is a
health care liability claim).

C. 
Analysis

          Baylor
argues that Dr. Shershow’s report fails to adequately identify the standard of
care and that he does not include specific information about what Baylor should
have done differently.  Dr. Shershow’s report presents the following as
Baylor’s standard of care under the facts of this case:

Standard of Care

 

A hospital such as
Baylor All Saints Medical [C]enter is expected to adhere to specific standards
of care in regard to all of its patients.  A bedrock principal [sic] in
providing care to its patients is the understanding that all of a hospital’s
patients by nature of their disease or injury are potentially vulnerable and
necessarily need to receive treatment in a safe and secure environment.  The
Joint Commission on Accreditation of Health Care Organizations (JCAHO) has
established in its Hospital Standards that all healthcare organizations must
have in place policies which safeguard patients from assault by hospital staff
and by strangers that enter the hospital.  The JCAHO requires that hospitals
adequately implement these standards, and monitor this implementation.  The
JCAHO patient security and safety expectations would require at a minimum that
hospitals should employ a sufficient number of security personal [sic] to
insure that no unauthorized persons enter patients[’] rooms and physically
assault their patients.  Additionally, the JCAHO standards would expect that
all hospital staff should be trained to identify persons that are not
authorized to enter patients[’] rooms and should monitor and prevent
unauthorized persons from having access to patients receiving treatment at the
hospital.

 

          The
Martins reply that the trial court did not abuse its discretion by denying
Baylor’s motion to dismiss, claiming that Dr. Shershow’s report was adequate. 
They alternatively argue that the medical records that section 74.351(s) allows
them to discover do not contain adequate information to establish the
appropriate standard of care and breach thereof, and hence, further discovery
should be allowed.

          We
observe that the Martins were well aware, as set out in their petition, of the
alleged facts of the assault.  Hence, it was incumbent upon their expert to
articulate the standard of care applicable to the hospital to prevent such an
assault, which does not require a factual inquiry into the measures taken by
the hospital to meet this standard of care.

          Dr.
Shershow’s report opines (1) that Baylor is expected to adhere to “specific
standards of care” for its patients, (2) that there must be policies in place
to safeguard patients from assault, including employing “a sufficient number of
security personal [sic] to insure that no unauthorized persons assault patients
and training staff to identify persons not authorized to enter patients[’]
rooms and prevent them from doing so,” and (3) that these standards must be
adequately implemented.  These opinions do not establish what specific policies
and safeguards should have been in place.  For example, the “policies in place
to safeguard patients” are not identified; neither are the number of security
personnel required nor the training the staff should have received regarding
identifying unauthorized persons.  See Wright, 79 S.W.3d at 52 (stating
that the expert must explain the basis of his statements to link his conclusions
to the facts).

          Keeping
in mind that mere conclusions about the standard of care are insufficient, that
the standard is “what an ordinary prudent hospital would do under the same or
similar circumstances,” and that “even a fair summary must set out what care
was expected,” see Palacios, 46 S.W.3d at 880, we cannot agree
that Dr. Shershow’s report fulfills the required specificity.

          And
although the Martins specifically complain that section 74.351(s) only allows
discovery of medical records and billing records, which do not contain the
circumstances surrounding the assault and hence provide no discovery as to
whether security standards were met, this is a misreading of the discovery
allowed under section 74.351(s).  Section 74.351(s) allows discovery “of
information, including medical or hospital records or other documents
or tangible things, related to the patient’s health care.”  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(s) (emphasis added).  Furthermore, as
assaults of the type here are covered by section 74.351, see Rubio,
185 S.W.3d at 851, logically, discovery of the hospital’s policies and
procedures regarding the protection of patients from assault must be covered by
section 74.351(s).  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s)
(stating that all discovery is stayed except for acquisition by the claimant of
information related to the patient’s health care); see also Bogar v. Esparza,
257 S.W.3d 354, 371–72 (Tex. App.—Austin 2008, no pet.) (op. on reh’g) (noting
that the plaintiff has the burden to establish that section 74.351’s discovery
limitations have in fact prevented her from satisfying the statute’s expert
report requirements and pursuing her claim).  But cf. Simmons v. Texoma Med.
Ctr., 329 S.W.3d 163, 174 (Tex. App.—El Paso 2010, no pet. h.)
(interpreting section 74.351(s) to preclude “[d]iscovery of issues such as
financial information, insurance and indemnity agreements, corporate
organization, and even bylaws, policies, and procedures” until an expert report
is served).

          Therefore,
we hold that with respect to the establishment of the appropriate standard of
care for Baylor and the breach of that standard, the Martins’ expert report was
deficient, and the trial court abused its discretion by finding otherwise.  We
sustain Baylor’s sole issue.[1]

IV. 
Conclusion

          Having
sustained Baylor’s sole issue, we reverse the trial court’s order and remand
this case to the trial court to consider whether to grant a thirty-day
extension to cure the deficiency.  See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(c); Leland v. Brandal, 257 S.W.3d 204, 207 (Tex.
2008); Foster v. Richardson, 303 S.W.3d 833, 845–46 (Tex. App.—Fort
Worth 2009, no pet.).

 

 

BOB MCCOY
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MCCOY and GABRIEL, JJ.

 

DELIVERED:  April 14, 2011









[1]Based on our resolution,
we do not reach Baylor’s other arguments.  See Tex. R. App. P. 47.1.