**Edmund SANCHEZ, M.D., Henry B. Randall, M.D., and Baylor University Medical Center, Appellants**

v.

**Nickolas MARTIN and Teresa Martin, Individually and as Representatives of the Estate of Jim Martin, Appellees.**

No. 05–11–01327–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 2012.

R. Brent Cooper, Cory M. Sutker, John A. Scully, Michelle E. Robberson, Cooper & Scully, P.C., Ty Bailey, Stinnett Thiebaud & Remington, L.L.P., Dallas, TX, for Appellant.

Jeffrey H. Kobs, Kobs, Haney & Hundley, L.L.P, Fort Worth, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and MYERS.

## OPINION

Opinion By Justice FITZGERALD.

This is an interlocutory appeal from an order denying appellants' motions to dismiss under the expert-report provisions of Chapter 74 of the Texas Civil Practice and Remedies Code. We reverse and remand.

### I. BACKGROUND

Our factual recitation is based upon appellees' live pleading. Appellees Nickolas and Teresa Martin are the survivors of decedent Jim Martin. Decedent received a liver transplant in May 2004. The liver he received was infected with rabies, and decedent died of rabies in June 2004. The donor was a "high-risk donor" who had been incarcerated up until two weeks before his fatal illness. A urine drug screen on the donor was positive for cocaine and cannabinoids. Appellant Sanchez was the surgeon who performed the liver-transplant surgery on decedent, appellant Randall was the transplant surgeon who accepted the liver from Southwest Transplant Alliance for decedent, and appellant Baylor was the recipient institution and transplant coordinator for decedent. The Martins have asserted that all three appellants are liable for decedent's death on theories of failure to obtain informed consent, general negligence, gross negligence, and fraud or intentional misrepresentation.

The procedural history of this case is lengthy. The Martins filed suit on May 4, 2006. They named only one defendant, Southwest Transplant Alliance, in their original petition. On July 10, 2006, they filed a first amended petition in which they added appellants as defendants. They al-leged that appellants negligently failed to get decedent's informed consent, and they also alleged that Baylor negligently failed to have adequate procedures in place regarding informed consent with respect to high-risk donors. The Martins also alleged gross negligence against all defendants. In September 2006, the Martins furnished appellants with two reports by the same expert, Youmin Wu, M.D. The reports were dated September 7, 2006, and were identical except that one included a reference to appellant Randall and the other did not. Appellants filed objections to the Wu reports and later filed motions to dismiss the case based on the expiration of the statutory deadline for providing an expert report and the alleged inadequacy of the Wu reports. On December 28, 2006, the Martins filed a second amended petition in which they added claims for fraud and intentional misrepresentation.

The trial judge heard appellants' motions to dismiss on January 4, 2007. At that hearing, the Martins argued, among other things, that they had not been given a copy of decedent's consent form until appellants filed their motions to dismiss, and consequently Wu had been unable to address the consent form in his reports. The trial judge expressed her reluctance to grant motions to dismiss in light of the late production of the consent form, and the hearing ended without a ruling on the record. The trial judge did not sign a written order on the motions to dismiss or a written order giving the Martins more time to furnish expert reports.

On or about February 2, 2007, the Martins furnished appellants with a third report by Wu. Each appellant filed an objection to the third Wu report, and each appellant subsequently filed a second motion to dismiss the case. The Martins filed responses to the second motions to dismiss, and the first hearing on those mo-

tions was held on October 3, 2007. At the hearing, it was discussed that two other health care liability cases, called *Biggs* and *Hightower*, were currently pending in other courts and involved organ transplants from the same donor. Moreover, the *Biggs* case had recently resulted in an appellate decision, and a motion for rehearing had been filed in that appeal. *See Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909 (Tex.App.-Dallas 2007, pet. denied) (*Biggs I*).[1] The Martins' counsel suggested that the case be abated pending the final appellate disposition of *Biggs I*. After the hearing, the trial judge signed an order administratively closing the case pending the final resolution of *Biggs I*.

In August 2008, the Texas Supreme Court denied the petition for review in *Biggs I*. In January 2009, a new trial judge assumed the bench in the 95th Judicial District Court and began presiding over this case. The new trial judge signed an order reopening the case in June 2010. In October 2010, the judge signed an order substituting a new attorney for the Martins' prior attorney, reciting that the Martins' prior attorney had resigned his law license and was no longer eligible to practice law in Texas. Meanwhile, a second appeal took place in the *Biggs* case, and this Court issued its opinion in that appeal on March 31, 2011. *Biggs v. Baylor Univ. Med. Ctr.*, 336 S.W.3d 854 (Tex.App.-Dallas 2011, pet. denied) (*Biggs II*).

The trial judge set appellants' second motions to dismiss for hearing on May 4, 2011. The morning of the hearing, the Martins filed a third amended petition. Therein they reiterated their already-pleaded claims and added a general negligence claim against appellants based on the theory that appellants breached the standard of care by performing or facilitat-

ing the liver transplant in question regardless of whether informed consent was obtained. The trial judge heard the second motions to dismiss and orally denied the motions in their entirety at the end of the hearing. The judge later signed a written order memorializing his ruling, and this interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (West Supp.2012). Meanwhile, on August 12, 2011, this Court issued an opinion in the other case involving an organ transplant from the same donor. *Hightower v. Baylor Univ. Med. Ctr.*, 348 S.W.3d 512 (Tex. App.-Dallas 2011, pet. denied).

## II. STANDARD OF REVIEW

■■■ We review the trial judge's determination of the adequacy of an expert report for abuse of discretion. *Id.* at 517. A trial judge has no discretion in determining what the law is or in applying the law to the facts. *Biggs I*, 237 S.W.3d at 916. A clear failure by the trial judge to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

## III. ANALYSIS

Baylor raises two issues on appeal. In its first issue, it argues that the trial judge abused his discretion by not dismissing the Martins' informed-consent claims. In its second issue, it argues that the trial judge abused his discretion by not dismissing the Martins' other claims. Sanchez and Randall filed a joint brief raising a single issue, whether the trial judge erred in failing to dismiss the lawsuit against them.

## A. Law governing expert reports and informed-consent claims

■■■ Chapter 74 of the civil practice and remedies code governs health care

---

1. The citation is to the opinion on rehearing that issued November 9, 2007, and withdrew the Court's prior opinion of August 28, 2007. *See Biggs I*, 237 S.W.3d at 912.

liability claims. *Brewster v. Columbia Med. Ctr. of McKinney Subsidiary, L.P.,* 269 S.W.3d 314, 316 n. 3 (Tex.App.-Dallas 2008, no pet.). A plaintiff who files a health care liability claim must serve an expert report on each party within 120 days after filing the original petition. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West 2011). An expert report must provide a fair summary of the expert's opinions regarding the applicable standards of care, the manner each physician or health care provider breached the standards, and the causal relationship between the breach and the injury claimed. *Id.* § 74.351(r)(6). If the plaintiff fails to serve an expert report as to a defendant physician or health care provider within the deadline, the defendant is entitled to dismissal of the claim with prejudice and an award of attorney's fees. *Id.* § 74.351(b). If a defendant makes a motion to dismiss in which it challenges the adequacy of a report, the court shall grant the motion only if the report does not represent a good-faith effort to comply with the definition of expert report found in section 74.351(r)(6). *Id.* § 74.351(*l*); *Hollingsworth v. Springs,* 353 S.W.3d 506, 513 (Tex.App.-Dallas 2011, no pet.). In determining whether a report constitutes a good-faith effort, courts are limited to the four corners of the report. *Biggs I,* 237 S.W.3d at 917. To be a good-faith effort, the report must provide enough information (1) to inform the defendant of the specific conduct the plaintiff has called into question and (2) to provide a basis for the trial judge to conclude that the claims have merit. *Hollingsworth,* 353 S.W.3d at 513. If a report omits a statutory element or states only the expert's conclusions without explanation, it is not a good-faith effort. *See id.* at 517; *Biggs I,* 237 S.W.3d at 917. When a suit involves more than one defendant, the plaintiff must supply expert reports sufficient to address each required element as to each defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a); *Biggs I,* 237 S.W.3d at 917.

■ The plaintiff must support each health care liability claim with an expert report. *Methodist Charlton Med. Ctr. v. Steele,* 274 S.W.3d 47, 50 (Tex.App.-Dallas 2008, pet. denied) ("The plain language of the statute ... requires such a report for each health care liability *claim.*"); *see also Hollingsworth,* 353 S.W.3d at 522 ("[A]n expert's report must address each *theory* of negligence raised by the plaintiff to avoid dismissal of that theory."). We recently explained that all specific liability theories arising from the same group of operative facts amount to a single cause of action and thus a single "claim" for purposes of the expert-report requirement. *Nexion Health at Duncanville, Inc. v. Ross,* 374 S.W.3d 619, 624–27 (Tex.App.-Dallas 2012, no pet. h.). Thus, allegations that arise from the same cause of action do not require a separate expert report. *See Peloza v. Cuevas,* 357 S.W.3d 200, 204–05 (Tex.App.-Dallas 2012, no pet.) (holding that new allegations that defendant doctor suffered from physical impairment did not state a new cause of action distinct from prior allegations of negligence in performing surgery, and thus did not require new expert report).

■ A claim based on the failure to obtain informed consent is a distinct claim that must be supported by an expert report. *See Hollingsworth,* 353 S.W.3d at 522. Informed-consent claims are governed by section 74.101 of the civil practice and remedies code:

In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately disclose the risks and hazards involved in the medi-

cal care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.101. Because the Texas Medical Disclosure Panel has not specifically determined what risks or hazards must be disclosed prior to liver transplant surgery, the informed-consent duty in this case is to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent. *See id.* §§ 74.101, 74.106(b); 25 TEX. ADMIN. CODE § 601.2; *Biggs I,* 237 S.W.3d at 914 & n. 3. We have elaborated that this standard means the defendant must disclose the material, inherent risks in the medical procedure performed, and that inherent risks are those that exist in and are inseparable from the procedure itself. *Biggs I,* 237 S.W.3d at 914–15. Causation in an informed-consent case consists of two parts. *Id.* at 922. The plaintiff must show both (1) a reasonable person could have been influenced in his decision to give or withhold consent by being informed of the undisclosed risks or hazards and (2) that the injury complained of was caused in fact by the undisclosed risk. *Id.*

**B. Timeliness and sufficiency of the Martins' reports**

**1. Whether the third Wu report was timely**

The Martins furnished two reports by Dr. Youmin Wu within 120 days after joining appellants as defendants. They furnished a third report by Wu on or about the 208th day after joining appellants but within 30 days after the January 4, 2007 hearing on appellants' first motions to dismiss. Although the trial judge did not

sign an order extending the time for the Martins to furnish expert reports, appellants take the position that the judge granted the Martins a 30–day extension under section 74.351(c). The Martins agree that the judge extended their expert-report deadline on January 4, but they argue that this extension was not granted pursuant to 74.351(c). In short, the parties do not dispute that the third Wu report was timely by virtue of an extension of the 120–day deadline, but they disagree as to the nature of that extension. Accordingly, we will consider the third Wu report to have been timely served. Because it was the Martins' lengthiest and most complete report, we will examine it for its sufficiency under Chapter 74.

**2. Informed-consent claims against all appellants**

■ Appellants raise several arguments in support of their position that the third Wu report is insufficient to support the Martins' informed-consent claims. We need address only causation.

■ An essential part of causation in an informed-consent case is proof that a reasonable person could have been influenced to decide to give or withhold consent by being informed of the risks or hazards that were not disclosed. *Biggs I,* 237 S.W.3d at 922; *accord Greenberg v. Gillen,* 257 S.W.3d 281, 283 (Tex.App.-Dallas 2008, pet. dism'd). In his third report, Wu opined, "It is foreseeable that an infectious disease may be transmitted via organ transplantation of a high-risk donor organ. Specifically, Mr. Martin died as a result of rabies being transmitted from the organ donated by the high-risk donor." Wu also opined that appellants' conduct "effectively denied [decedent] the opportunity to reject the organ he received." Wu's third report does not contain any opinions about whether a reasonable person could have been

influenced to decide to give or withhold consent by being informed of the risks or hazards that were not disclosed. It is thus similar to the report that we held was deficient in *Biggs I. See* 237 S.W.3d at 922–23; *see also Greenberg,* 257 S.W.3d at 283 (holding expert report insufficient because it did not address the reasonable-person causation standard). We conclude the third Wu report does not comply with Chapter 74's requirements concerning causation.[2]

The trial judge abused his discretion by concluding that the Martins served an adequate expert report in support of their informed-consent claims.

### 3. Fraud and intentional misrepresentation claims against all appellants

The Martins asserted claims for fraud and intentional misrepresentation against appellants in their second and third amended petitions. Although Sanchez and Randall frame their appellate issue as challenging the trial judge's failure to dismiss the entire lawsuit, they present no appellate argument in their opening brief with respect to the Martins' fraud and intentional-misrepresentation claims. Sanchez and Randall mention those claims in their reply brief, but we cannot consider matters raised for the first time in a reply brief. *See Dallas Cnty. v. Gonzales,* 183 S.W.3d 94, 104 (Tex.App.-Dallas 2006, pet. denied). Accordingly, we will not disturb the trial judge's refusal to dismiss the Martins' fraud and intentional-misrepresentation claims against Sanchez and Randall. *See Drum v. Calhoun,* 299

S.W.3d 360, 364 (Tex.App.-Dallas 2009, pet. denied) (court of appeals may not review issue unsupported by argument).

Baylor does argue in its appellate brief that the trial judge erred by failing to grant Baylor's second motion to dismiss as to the Martins' fraud and intentional-misrepresentation claims. In support of these claims, the Martins alleged that one or more defendants committed actions or omissions that "constitute[d] fraud or an intentional misrepresentation of material facts [and] were designed to induce or deceive Jim Martin into proceeding with a transplant by providing information which was false." For the reasons stated below, we conclude that the Martins' fraud claims are recast informed-consent claims. Having already concluded that the third Wu report was insufficient to support the Martins' informed-consent claims, we reach the same conclusion as to their fraud claims.

It is settled law that a claimant cannot avoid the expert-report requirements of Chapter 74 by recasting a health care liability claim as a different cause of action. *See, e.g., Saleh v. Hollinger,* 335 S.W.3d 368, 373–74 (Tex.App.-Dallas 2011, pet. denied). That is, we look to the underlying nature of the claims and allegations, and not to the labels used by the claimant, to determine whether Chapter 74 applies. *Id.* With respect to informed-consent claims, Chapter 74 prescribes a specific rule against the recasting of claims:

> In a suit against a physician or health care provider involving a health care

---

**2.** Having found one deficiency that requires reversal, we do not address the sufficiency of the expert report as to the other statutory elements. We do not imply that the report is sufficient as to those elements. *See Gates v. Altaras,* No. 10–09–00236–CV, 2010 WL 965960, at *4 & n. 2 (Tex.App.-Waco Mar. 10, 2010) (mem. op.) (holding that report was deficient as to causation, declining to consider other alleged deficiencies, and presuming that claimant would "take such precautions as may be necessary to avoid another determination of a deficiency after which there would be no opportunity to cure"), *rehearing denied,* 315 S.W.3d 134 (Tex.App.-Waco 2010, no pet.).

liability claim that is based on the failure of the physician or health care provider to disclose or adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.101. In this case, the Martins specifically asserted informed-consent claims against all three appellants. Their pleadings in support of their claims for fraud or intentional misrepresentation are vague, and those pleadings include no averments of fact that distinguish those claims from the Martins' informed-consent claims. The Martins allege only that the alleged misrepresentations were "designed" to cause decedent to proceed with the liver transplant. This is similar to the necessary causal nexus in an informed-consent case. We conclude that the Martins' claims for fraud and intentional misrepresentation are actually recast informed-consent claims despite the label attached to them by the Martins.

As previously stated, the third Wu report does not comply with Chapter 74's requirements concerning causation with respect to the Martins' informed-consent claims. Accordingly, the trial judge abused his discretion by concluding that the Martins served an adequate expert report in support of their mislabeled claims for fraud and intentional misrepresentation against Baylor.

### 4. Negligence claims against Baylor based on its policies and procedures

In their first, second, and third amended petitions, the Martins alleged that Baylor negligently failed to develop, implement, and enforce effective informed-consent policies and procedures for high-risk organ donors, and that this was a proximate cause of the injuries in question. We conclude that these negligence claims against Baylor, like the Martins' fraud claims, are merely recast informed-consent claims. If a claim is based on a physician's or health care provider's failure to adequately disclose the risks of a procedure, the only theory available to the claimant is a claim for negligent failure to obtain informed consent. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.101. Although the Martins attempt to assert separate negligence claims based on Baylor's policies and procedures relating to informed consent, such a claim is necessarily predicated on an actual failure to obtain informed consent from decedent. Thus, the claims can be brought only as an informed-consent claims.

As previously stated, the third Wu report does not comply with Chapter 74's requirements concerning causation with respect to the Martins' informed-consent claims. Accordingly, the trial judge abused his discretion by concluding that the Martins served an adequate expert report in support of their mislabeled claims for Baylor's alleged negligence in maintaining effective informed-consent policies and procedures.

### 5. General negligence claims against all appellants

In their third amended petition, the Martins added a new heading, "Defendants' Negligence (General)," under which they pleaded that appellants were negligent simply by participating in the transplantation of "a high-risk donor liver into a low-risk patient." On appeal, appellants raise several arguments attacking this claim. Sanchez and Randall argue that this claim is invalid because section 74.101 limits the Martins to an informed-consent

theory of liability in this case, because the Martins' general negligence theory is a "recasting" of their informed-consent claims, and because the Martins did not tender a timely and sufficient expert report in support of the general negligence claim. Baylor makes similar arguments, and it also argues that the Martins did not successfully plead a separate general negligence claim at all.

### a. Sanchez and Randall

■ We conclude that we cannot address Sanchez and Randall's arguments attacking the Martins' general negligence claims because Sanchez's and Randall's second motions to dismiss were not broad enough to challenge those claims. Sanchez's and Randall's second motions to dismiss were limited to the Martins' informed-consent claims. The Martins added their general negligence claims in their third amended petition, which they filed after appellants filed their second motions to dismiss. At the hearing on appellants' second motion to dismiss, counsel for the Martins discussed the general negligence claim, and the attorney for Sanchez and Randall argued that the general negligence claim was both pleaded too late and amounted to a mere recasting of the informed-consent claim. But Sanchez and Randall never amended their motions to dismiss to address the Martins' new general negligence theory.

■ The El Paso Court of Appeals has recently addressed the situation in which a claimant amends his pleadings to add a new claim after the defendant has filed a motion to dismiss attacking the claimant's expert reports. *See Simmons v. Texoma Med. Ctr.*, 329 S.W.3d 163, 176–81 (Tex. App.-El Paso 2010, no pet.). The court analogized the situation to summary-judgment practice, in which the general rule is that new claims added after the filing of a

summary-judgment motion cannot properly be dismissed if the motion is not amended to encompass the new claims. *Id.* at 177. There is an exception, however, if the grounds for summary judgment are broad enough to encompass the subsequently added claims or negate an element of those claims. *Id.* In *Simmons*, the plaintiff added a claim for violations of the "patient's bill of rights" after the defendant filed its motion to dismiss, and the trial judge dismissed the entire case even though the defendant did not amend its motion to dismiss. *Id.* at 167, 176. The court of appeals affirmed, holding that the defendant's motion to dismiss was broad enough to encompass even the new claim because the defendant demonstrated that the author of the alleged expert report was not a qualified expert at all and was not even related to the health care industry. *Id.* at 172, 180–81.

In the instant case, Sanchez's and Randall's second motions to dismiss were not broad enough to encompass the Martins' newly pleaded general negligence claims. Unlike the defendants in *Simmons*, Sanchez and Randall did not attack Wu's qualifications in their motions. Instead, they focused their second motions to dismiss on the Martins' informed-consent claims and tailored their arguments to the unique aspects of proving the standard of care and causation in informed-consent cases. These arguments are not broad enough to encompass the Martins' claims that appellants were negligent by transplanting or facilitating the transplant of this high-risk organ into decedent, independent of any informed-consent issues. Sanchez and Randall simply did not challenge Wu's reports with respect to this general negligence theory. Accordingly, we have no jurisdiction to consider their appellate challenges to those claims. *See City of Dallas v. Heard*, 252 S.W.3d 98,

103 (Tex.App.-Dallas 2008, pet. denied) (in an interlocutory appeal from a denial of a plea to the jurisdiction, "[w]e do not have jurisdiction to consider grounds outside those raised in the plea to the jurisdiction"); *see also Brar v. Sedey*, 307 S.W.3d 916, 919 (Tex.App.-Dallas 2010, no pet.) (refusing to consider, on interlocutory appeal from temporary injunction, jurisdictional arguments that had not been raised in the trial court).

### b. Baylor

■ We reach a different conclusion as to Baylor. Although Baylor's second motion to dismiss focused on the Martins' informed-consent claims, it also contained more sweeping language that Wu's third report "fails to identify a standard of care applicable to Baylor." This challenge was broad enough to encompass even the Martins' later-pleaded general negligence claims. Accordingly, we can consider Baylor's argument on appeal that Wu's report is deficient as to the standard-of-care element of the Martins' general negligence claim. We do not consider Baylor's other appellate arguments attacking that claim.

■ We agree with Baylor that Wu's third report is deficient with respect to the standard of care for a general negligence claim. "The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex.2001). Wu's third report contains no clear explanation of the standard of care applicable to a hospital acting as a liver transplant coordinator under these circumstances. At most, Wu offers some conclusory assertions that Baylor breached the standard of care, without first explaining what that standard of care is. The following relevant passages appear in the section of Wu's third report

under the heading "Standard of Care for Baylor University Medical Center":

> In summary, Baylor ... failed to inform Mr. Martin of the high risk nature of the donor liver he was to receive. Also, this transplantation of a high-risk donor liver into a low-risk patient deviated from the standard of care in liver transplantation, all of which resulted in Mr. Jimmy Martin's death due to rabies transmitted by the transplanted liver.... Both failing to obtain informed consent as to the high risk nature of an organ donor and transplanting a high-risk liver into a non-urgent patient such as Mr. Martin are deviations from the accepted standard care [sic] as well as UNOS policy and CDC guidelines.

Thus, Wu opines that performance of this liver transplant on decedent deviated from the standard of care. But Baylor did not perform the liver transplant surgery in question; Wu's report itself states that Sanchez did. According to Wu's report, Baylor was the "recipient institution" and acted as the "transplant coordinator." But Wu offers no opinions that an ordinarily prudent hospital, recipient institution, or transplant coordinator would not have permitted someone else—the transplant surgeon—to transplant this "high-risk liver" into someone in decedent's condition. We are limited to the four corners of the report, *Biggs I*, 237 S.W.3d at 917, and we conclude that the third Wu report does not adequately set forth a standard of care applicable to Baylor to support the Martins' general negligence claim.

The trial judge erred by denying Baylor's second motion to dismiss with respect to the Martins' claim for general negligence.

### 6. Conclusion

For the foregoing reasons, we conclude that the trial judge abused his discretion in

determining that the Martins provided a sufficient expert report in support of (1) their claims against all appellants for failure to obtain informed consent, (2) their claims against Baylor for fraud, intentional misrepresentation, and negligence in establishing and implementing policies and procedures regarding informed consent and high-risk donors, all of which are actually recast informed-consent claims, and (3) their general negligence claims against Baylor. We express no opinion with respect to the Martins' fraud, intentional misrepresentation, and general negligence claims against Sanchez and Randall.

## C. Extension of time

The Martins argue that if we find their reports deficient in any respect, we should remand the case so that the trial judge can consider whether to grant a 30–day extension to cure the deficiencies pursuant to section 74.351(c). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (allowing trial court to "grant one 30–day extension to the claimant in order to cure the deficiency" if "elements of the report are found deficient"). Appellants contend that the first trial judge already granted the Martins the single 30–day extension allowed by section 74.351(c). The threshold question thus becomes whether the first trial judge to preside over this matter granted the Martins an extension of time because she found the first two Wu reports deficient on the statutory elements. We agree with the Martins that she did not, so the Martins are at least potentially eligible for another extension.

### 1. The basis for the extension granted by the first trial judge

The record shows that the first trial judge granted the Martins a 30–day extension to amend or supplement the first two Wu reports, and that the extension was not memorialized in a written order. The

extension was granted at or after the January 4, 2007 hearing on appellants' first motions to dismiss. The Martins argued in opposition to those motions that, despite their request for a complete copy of decedent's medical records, they were not given a copy of decedent's alleged consent form until appellants filed and served their first motions to dismiss. The original trial judge said the following:

> Okay. Here is where I am. I am reluctant to grant a motion to dismiss at this time at a minimum for that reason. I think Dr. Wu should have the ability to look at that consent form, or whatever you choose to call it, and update his report.

Shortly after that, the judge said, "All right. Let's go off the record," and that was the end of the recorded portion of the hearing. At a subsequent hearing, counsel for Sanchez and Randall stated on the record and without objection that the first trial judge gave the Martins "a 30–day extension to file a new report after Dr. Wu had a chance to review" the consent form. In its second motion to dismiss, Baylor acknowledged that the trial court "reserved its ruling and gave Plaintiffs time to submit an additional expert report in light of the fact that they had obtained new medical records (namely, the informed consent forms)." On or about the twenty-ninth day after the first hearing, the Martins served the third Wu report on appellants. In their second motions to dismiss, Sanchez and Randall attacked the sufficiency, not the timeliness, of the third Wu report. Similarly, Baylor's second motion to dismiss focused on the substantive sufficiency rather than the timeliness of the third Wu report. At the hearing on appellants' second motions to dismiss, the Martins argued that the original trial judge granted the 30–day extension without determining that the first two Wu reports

were deficient, while counsel for Sanchez and Randall argued that the very granting of the extension was an implicit determination that the reports were deficient.

We conclude that the record does not support appellants' position that the extension granted by the first trial judge was based on a determination that the first two Wu reports were insufficient. The reporter's record of the hearing on the first motions to dismiss contains no indication that the first trial judge made any determination as to the sufficiency of the expert reports, and the only view the judge expressed on the record was that the Martins should have an extension so that their expert could review and opine about some additional medical records. Although counsel for Sanchez and Randall argued at a later hearing that the first trial judge implicitly found the first two Wu reports deficient, that inference is not supported by anything in the record. The judge's statement that she was reluctant to grant the motions to dismiss "at a minimum" because the Martins had not gotten all the information they needed to give their expert does not imply that the judge ever went on to find any other reasons to grant an extension.

■■■ Thus, ours is the first judicial determination in this case that Wu's reports were deficient. We conclude that the Martins are therefore potentially eligible for a 30–day extension under section 74.351(c) despite the prior extension. Our conclusion is supported by the case of *Gates v. Altaras,* No. 10–09–00236–CV, 2010 WL 965960 (Tex.App.-Waco Mar. 10, 2010) (mem. op.), *rehearing denied,* 315 S.W.3d 134 (Tex.App.-Waco 2010, no pet.). In that case, the trial court denied the defen-

dants' motion to dismiss, and they appealed. *Id.* at *1. While the case was on appeal, the parties struck an oral agreement on the record that the plaintiff would have 45 days to tender a supplemental expert report, in exchange for which the defendants dismissed their appeal. *Id.* at *3. The defendants later moved to dismiss based on alleged deficiencies in the supplemental expert report, the trial court denied the motion, and the Waco Court of Appeals reversed and remanded so that the trial court could consider granting a 30–day extension. *Id.* at *1–4. The defendants argued that the claimant had already received one extension and that no further extensions could be granted under the statute. *Id.* at *3. The court of appeals rejected this contention because the first extension was granted without any judicial determination that the claimant's expert report was deficient. *Id.* Because section 74.351(c) authorizes a 30–day extension after such a determination, the court reasoned, the extension based on the agreement of the parties did not extinguish the claimant's right to seek an extension under section 74.351(c). *Id.* In this case, the extension of time based on the incompleteness of the medical records given to the Martins was not an extension based on the insufficiency of their expert reports, so the Martins remain eligible for an extension under section 74.351(c).[3]

### 2. Whether the Martins are eligible for a further extension

■■■ A claimant is eligible for a 30–day extension to cure a defective report as long as the defective report (1) is timely, (2) contains the opinion of an individual with expertise that the claim has merit, and (3)

---

**3.** Appellants have not raised an argument on appeal that the trial judge erred by granting the extension on this basis. Thus, we express no opinion as to whether the trial judge could

properly grant an extension based on the incompleteness of the medical records furnished to the claimants.

implicates the defendant's conduct. *Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex.2011); *see also St. Luke's Sugar Land Hosp. v. Joseph*, No. 14–11–00932–CV, 2012 WL 2860687, at *7–8 (Tex.App.-Houston [14th Dist.] July 12, 2012, no pet. h.) (mem. op.) (applying *Scoresby*). This is a "minimal standard." *Scoresby*, 346 S.W.3d at 557. But if a purported report fails to meet this minimal standard, the claimant relying on the report is not eligible for a 30–day extension. *See, e.g., Fung v. Fischer*, 365 S.W.3d 507, 534–37 (Tex. App.-Austin 2012, no pet.) (concluding that reports were so deficient that claimants were ineligible for an extension of time).

### a. Informed-consent claims against Baylor

■■■ We conclude that the Martins are not eligible for a 30–day extension of time with respect to their informed-consent claims against Baylor. These claims are frivolous, and the defects in Wu's third report cannot be cured as to those claims, because Baylor simply cannot be liable under a theory of failure to obtain informed consent. "In Texas, the duty to obtain informed consent is a nondelegable duty imposed solely upon the treating doctor." *Espalin v. Children's Med. Ctr.*, 27 S.W.3d 675, 686 (Tex.App.-Dallas 2000, no pet.). Thus, "[h]ospitals have no such duty of disclosure of medical or surgical risks, nor are they required to secure a patient's informed consent prior to surgery." *Id.* Because Baylor owed no duty to decedent to obtain his informed consent, Baylor was not required to conform to any standard of care in that regard. *See Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex. App.-Dallas 1993, writ denied) ("A duty represents a legally enforceable obligation to conform to a particular standard of conduct."). Thus, it is impossible for the Martins to provide an expert report that could satisfy the requirements of standard of care, breach, and causation with respect to their informed-consent claims against Baylor. Accordingly, the Martins are not eligible for a 30–day extension of time with respect to their informed-consent claims against Baylor. This holding applies equally to their claims against Baylor for fraud, intentional misrepresentation, and negligent policies concerning informed consent, because these claims are merely recast informed-consent claims. All of these claims must be dismissed.

### b. Other claims

We next apply the *Scoresby* test to the Martins' other claims that we have held to be inadequately supported by Wu's third report, those being (1) the informed-consent claims against Sanchez and Randall and (2) the general negligence claim against Baylor. As to these claims, we conclude that Wu's third report does clear the minimal threshold established in *Scoresby*, and that the Martins are eligible for a 30–day extension of time.

■■■ With respect to the Martins' informed-consent claims against Sanchez and Randall, the third Wu report implicates the conduct of both Sanchez and Randall by name and contains Wu's opinions that the claims have merit. The report identifies Sanchez as the surgeon who performed the liver transplant, so, under the facts as stated, Sanchez owed decedent a duty to obtain informed consent. *See Espalin*, 27 S.W.3d at 686. Although it is not entirely clear from the report whether Randall qualifies as a "treating doctor," *id.*, who owed decedent a duty of informed consent, Wu's report does not rule out that possibility. Thus, at this stage of the proceedings, we conclude that the Martins are eligible for a 30–day extension of time to cure their deficient reports as to their

informed-consent claims against Sanchez and Randall.

As to the Martins' general negligence claims against Baylor, the third Wu report also implicates the conduct of Baylor and contains Wu's opinion that the claims have merit. In the section of his third report addressing Baylor, Wu explains that decedent's pre-existing condition was not life-threatening and opines that transplanting this high-risk liver into decedent was a deviation from the standard of care. Although we have concluded that Wu's report is deficient because it does not state or explain the standard of care applicable to a hospital where transplant surgery is performed, the Martins might be able to cure this deficiency in an amended report. Thus, we conclude that the Martins are eligible for a 30–day extension of time to cure their deficient reports as to the general negligence claims against Baylor. *See Scoresby,* 346 S.W.3d at 557 (holding that claimant was eligible for extension of time even though claimant's expert report did not state the standard of care).

As to the informed-consent claims against Sanchez and Randall, and as to the general negligence claims against Baylor, we will remand the case so that the trial judge may consider whether to grant an extension under section 74.351(c). *See, e.g., Biggs I,* 237 S.W.3d at 923.

## IV. DISPOSITION

We reverse the trial court's order denying appellants' second motions to dismiss, we render judgment dismissing the Martins' claims against Baylor for failure to obtain informed consent, fraud, intentional misrepresentation, and negligence in maintaining policies and procedures regarding informed consent as to high-risk donors, and we remand for further proceedings consistent with this opinion.