**REVERSE and RENDER; and Opinion Filed July 25, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00018-CV

**NEXION HEALTH AT LANCASTER, INC. D/B/A MILLBROOK HEALTHCARE AND REHABILITATION CENTER AND NANCY LAWSON, Appellants**

**V.**

**GURTHA WELLS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF WILLIE WELLS, DECEASED, STEVE M. WELLS AND TAMMIE J. WELLS, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-02533**

## MEMORANDUM OPINION
Before Justices Francis, Fillmore, and Schenck
Opinion by Justice Schenck

This is an interlocutory appeal of the denial of a motion to dismiss appellees' health care liability claims for failure to serve expert reports that comply with section 74.351 of the Texas Civil Practice and Remedies Code filed by appellants Nexion Health at Lancaster, Inc. d/b/a Millbrook Healthcare and Rehabilitation Center ("Nexion") and Nexion's Director of Nursing, Nancy Lawson, ("Lawson"). TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2015). Appellants urge that the trial court erred by denying their motion and by failing to award them attorney's fees. For the reasons outlined in this opinion, we reverse the trial court's December 18, 2015 order denying appellants' motion to dismiss, render judgment dismissing appellees' claims against appellants with prejudice, and remand this case to the trial court to determine the reasonable attorney's fees and costs to be awarded to appellants pursuant to section 74.351(b)(1)

of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1); TEX. R. APP. P. 43.2. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Willie Wells resided at Nexion's healthcare and rehabilitation facility in Lancaster, Texas at various times between July and September 2013 after undergoing bowel surgery at University General Hospital. On September 19, 2013, at an unspecified time, nurse Tracee Rainey examined Mr. Wells. She noted that Mr. Wells' abdomen was semi-firm and mildly distended, and that his bowel sounds were present but sluggish. She contacted medical management for gastrointestinal concerns and indicated he would have an esophagram in the morning. On September 20, 2013, Nexion transferred Mr. Wells to University General Hospital with complaints of stomach pain and gas. He later died from complications arising from a bowel obstruction.

Gurtha Wells, individually and as the representative of the estate of Willie Wells, Deceased, Steve M. Wells, and Tammie J. Wells' (collectively the "Wells") sued Nexion and Lawson for negligence related to their care of Mr. Wells. More particularly, Wells alleged Nexion and Lawson (1) failed to evaluate timely Mr. Wells' bowel condition, (2) failed to prevent Mr. Wells from failing on two occasions, and (3) failed to address adequately his symptoms of bowel dysfunction on September 19, 2013.[1]

Prior to the expiration of Wells' 120 day expert report deadline under section 74.351 of the civil practice and remedies code, Wells served appellants with the initial expert reports of Dr. Manuel A. Eskildsen regarding the conduct of Nexion and Lawson. Appellants objected to the sufficiency of the reports arguing neither report sufficiently linked the alleged breaches of

---

[1] Appellants' alleged negligence in failing to prevent Mr. Wells' falls is not included as a causative event of his death.

Nexion's and Lawson's respective standards of care to Mr. Wells' injuries. After hearing appellants' motion, the trial court found the reports were deficient and granted Wells a 30-day extension to cure the deficiencies. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). Wells served two amended expert reports within the allotted time.

Appellants objected to the amended reports as failing to sufficiently set forth a causal link between their conduct and Mr. Wells' death, and moved for dismissal of Wells' claims with prejudice and requested attorney's fees and costs. After hearing, the trial court denied appellants' motion and appellants timely filed this interlocutory appeal.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to dismiss a health care liability claim based on the sufficiency of an expert's report for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam); *Nexion Health at Terrell Manor v. Taylor*, 294 S.W.3d 787, 791 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). We must defer to the trial court's factual determinations if they are supported by the evidence, but review its legal determinations de novo. *Van Ness*, 461 S.W.3d at 142. A trial court has no discretion, however, in determining what the law is or in applying the law to the established facts. *Sanchez v. Martin*, 378 S.W.3d 581, 587 (Tex. App.—Dallas 2012, no pet.). With these standards in mind, we turn to appellants' issues.

## DISCUSSION

In appellants' first and second issues, appellants argue the trial court abused its discretion in denying their motion to dismiss because Wells' expert reports fail to identify a basis for

requisite causation in that they do not state how appellants' alleged breaches of the standard of care caused Mr. Wells' death.

## I.    Applicable Law

Chapter 74 of the civil practice and remedies code governs health care liability claims. *Brewster v. Columbia Med. Ctr. of Mckinney Subsidiary, L.P.*, 269 S.W.3d 314, 316 n.3 (Tex. App.—Dallas 2008, no pet.). Under that chapter, any person who brings suit asserting a health care liability claim must, within 120 days of the filing of the defendant's answer, provide an expert report for each physician or health care provider against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). An "expert report" is defined as a written report that provides a fair summary of the expert's opinions as of the date of the report regarding (1) applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6). A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation. *See Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.).

A trial court must grant a motion challenging the adequacy of an expert report only if it appears, after hearing, that the report does not represent an objective good faith effort to comply with the definition of "expert report" in section 74.351(r)(6). TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l). In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Sanchez*, 378 S.W.3d at 588. A court may not "fill gaps" in an expert report by drawing inferences or guessing what the expert likely meant or intended. *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). If a report omits any of the statutory

–4–

elements of section 74.351(r)(6), it cannot be a good faith effort. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). As noted, one of the mandatory elements of a good faith report is an explanation of the causal relationship between a failure to meet the applicable standard of care and the injury, harm, or damages claimed.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that, absent this act or omission, the harm would not have occurred. *Mitchell v. Satyu*, 05–14–00479–CV, 2015 WL 3765771, at *4 (Tex. App.—Dallas June 17, 2015, no pet.) (mem. op.) (citing *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.)). An expert report must explain "to a reasonable degree, how and why the breach [of the standard of care] caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 539–40. The report "must explain the basis of [the expert's] statements to link his conclusions to the facts." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.). An expert's mere conclusion that "in medical probability" one event caused another differs little, without an explanation tying the conclusion to the facts, from an ipse dixit, which the supreme court has consistently criticized. *Jelinek*, 328 S.W.3d at 539.

## II.     Application of the Law

The question presented in appellants' first and second issues is whether Dr. Eskildsen's reports provide enough explanation to render his causation opinions adequate; that is, whether Dr. Eskildsen's reports supply the "how and why" of a causal relationship between appellants' purported breaches of the applicable standards of care and Mr. Wells' death.

## A.     *Summary of the Facts Reported*

Both of Dr. Eskildsen's reports contain the following summary of facts.  On March 23, 2013, Mr. Wells was admitted to University General Hospital due to a history of volvulus,[2] uncontrolled hypertension, bipedal edema, and malnutrition.  He was treated and discharged on April 2, 2013.  On July 1, 2013, Mr. Wells was again admitted to University General Hospital, this time with abdominal pain, nausea and vomiting.  He was diagnosed as having a sigmoid volvulus with perforation.  A resection was performed and Mr. Wells was discharged to Nexion on July 11, 2013.  On July 15, 2013, at the request of Mr. Wells' wife, Mr. Wells was transported back to University General Hospital.  He was found to be hypotensive, hypovolemic, and had developed a urinary tract infection.  He was treated and transferred back to Nexion on July 19, 2013.  On September 10, 2013, Nexion documented Mr. Wells had one fall in the last 30 days and a total of four falls in the last 90 days.  On September 19, 2013, nurse Rainey examined Mr. Wells.  The time of the examination is not noted.  Nurse Rainey noted that Mr. Wells' abdomen was semi-firm and mildly distended, and his bowel sounds were present but sluggish.  She contacted medical management for gastrointestinal concerns and indicated Mr. Wells would have an esophagram in the morning.  On September 20, 2013, Mr. Wells was transferred back to University General Hospital by ambulance due to his report of a stomach ache and gas.  The time of transport is not noted.  A computed tomography scan of the abdomen and pelvis showed extensive pneumoperitoneum with associated ascites[3] and subcutaneous air.  The hospital admitted Mr. Wells with acute abdomen, sepsis, shock, and hypokalemia.  The record and Dr. Eskildsen's reports do not indicate whether additional tests were performed after Mr. Wells was

---

[2] A volvulus occurs when part of the large intestine is twisted on itself and the mesentery. The mesentery is a supportive tissue that anchors the intestines to the back wall of the abdomen. The twisted intestine creates a bowel obstruction that cuts off the blood supply and affects bowel function.  The Medical Center of Plano, http://www.themedicalcenterofplano.com.

[3] Ascites is the build-up of fluid in the space between the lining of the abdomen and the abdominal organs.  University of Maryland Medical Center, http://www.umm.edu/health/medical/ency/articles/ascites.

admitted or how Mr. Wells was treated after admittance. On September 28, 2013, Mr. Wells died. The noted cause of death was bowel obstruction.

### B. Nexion - Standard of Care

Dr. Eskildsen's report concerning Nexion states Nexion was required to:

1. Properly evaluate Mr. Wells upon his admission into the facility for signs or symptoms of bowel abnormalities and/or constipation;

2. Institute a system for monitoring Mr. Wells for abdominal pain and swelling, as well as for constipation;

3. Communicate abnormal findings regarding Mr. Wells' abdomen to his physician and family; and

4. Properly treat Mr. Wells if he exhibited signs and symptoms of constipation, bowel obstruction, or emerging infection.

### C. Nexion - Claimed Breaches of the Standard of Care

Dr. Eskildsen states Nexion breached the standards of care by:

1. Failing to evaluate properly Mr. Wells for signs and symptoms of bowel abnormalities and/or constipation; and

2. Failing to report Mr. Wells' developing bowel obstruction to his treating physician or family.

Dr. Eskildsen further elucidated that Nexion's failure to recognize that Mr. Wells' symptoms on September 19, 2013 necessitated immediate evaluation and failure to notify Mr. Wells' family and physician on September 19, 2013 were breaches of the standard of care.

### D. Nexion - Causation

As to causation, Dr. Eskildsen states:

As a direct result of [Nexion's] breaches of the above standards of care, I conclude that Willie Wells' death on September 28, 2013 was directly caused by a bowel obstruction that he developed while under the care and supervision of [Nexion]. *More specifically*, on September 19, 2013, the facility documented findings that Mr. Wells' abdomen was abnormal. This condition went untreated. As a result of this untreated bowel obstruction, Mr. Wells developed a new perforation in his bowel at the site of his prior bowel surgery. This new perforation resulted in fecal peritonitis, which is a leakage of bowel fluid and

contents directly into his abdomen. By the following day, Mr. Well's untreated bowel obstruction and fecal peritonitis had developed into sepsis. Which is an infection of the blood [sic]. Due to this, Mr. Wells subsequently went into septic shock, and ultimately died of his bowel obstruction. Thus, based on my education, training and education as a medical doctor, as well as my review of the relevant medical records in this case, I have concluded that Mr. Wells' bowel obstruction, which he developed while under the care and supervision of [Nexion] was a substantial contributing factor to his death on September 28, 2013.

(emphasis added). This opinion is much like the opinions in the *Ortiz*, *Jeffers*, and *Klovenski* cases, in that it identifies the manner of the injury but does not explain how it relates to an identified breach in the standard of care or state why, but for the claimed breach, the injury or death would not have resulted.

In *Ortiz*, the patient sought treatment for respiratory complaints at a medical facility and died the next day. In the subsequent malpractice lawsuit, the claimants relied on an expert report that recited, in pertinent part:

> Failing to do the appropriate tests, make the correct diagnosis, and recognize the clinical severity and risks involved in not referring Mr. Ortiz for admission to a hospital did not meet the standard of care, and contributed to the premature death of this man. If Mr. Ortiz had received appropriate evaluation and treatment it is more likely than not that he would have survived this ordeal.

*Ortiz*, 378 S.W.3d at 673. In that case, we concluded that the expert failed to explain how Ortiz's death resulted from the breaches of the standard of care identified in the report, and accordingly we concluded that the trial judge properly granted the defendants' motion to dismiss. *Id.* at 674.

In *Jeffers*, the patient sought treatment for an upper respiratory infection at a hospital and died the next morning from cardiac arrest. In the subsequent medical malpractice case, the claimants relied on an expert report that recited, in relevant part:

> [Physician's Assistant] Knightstep failed to timely examine Ms. Jeffers and appropriately intervene. As such, she failed to appreciate and address Ms. Jeffers' clearly deteriorating condition. As a result, Ms. Jeffers' worsening hypoxia ultimately led to profoundly inadequate oxygenation and associated

cardiac arrest and death.

*Debra Knightstep, P.A. v. Jeffers*, No. 05–12–01067–CV, 2013 WL 3487933, at *3 (Tex. App.—Dallas July 10, 2013, no pet.) (mem. op.). In that case, we concluded the expert failed to state an opinion on the causal connection between the breaches of the standards of care and Ms. Jeffers' death. *Id.* In doing so, we noted the expert did not state how Knightstep's failing to physically examine Jeffers caused her death or how performing appropriate additional testing would have prevented her death. *Id.* Accordingly, we reversed the trial court's order denying Knightstep's motion to dismiss and remanded the case for a determination of whether Jeffers should be granted a 30-day extension to cure deficiencies in the report.

In *Klovenski*, the patient sought treatment from Dr. Kapoor, her primary care physician, for a lump on her thigh. Dr. Kapoor failed to discover the lump was cancerous. Another physician diagnosed Klovenski with cancer four months later. Klovenski died a year and two months later. In the subsequent medical malpractice case, the claimants relied on an expert report that recited, in relevant part:

> I find Dr. Kapoor's failure to timely diagnose the cancer in the left thigh of his patient Margaret Klovenski of [sic] a four month period of time . . . directly resulted in the spread of this beyond therapeutic (surgical, radiation, and chemotheraphy, as provided) control, leading to Mrs. Klovenski's ultimate debilitating and painful death, none of which, it is probable, would have occurred had Dr. Kapoor initially diagnosed the cancer in his patient's leg successfully.

*Kapoor v. Estate of Klovenski*, No. 14–09–00963–CV, 2010 WL 3721866, at *4 (Tex. App.—Houston [14th Dist.] Sept. 23, 2010 no pet.) (mem. op.). In that case, the Houston court of appeals concluded the expert failed to connect her conclusion to any specific facts regarding whether Klovenski's type of cancer was treatable, either before or after its eventual diagnosis. *Id.* at *5. The court further concluded that the expert's opinion required the court to infer that (1) different, more effective treatment would have been available for Klovenski's unidentified type of cancer three months earlier, or (2) earlier treatment would have been more likely to improve

Klovenski's prognosis. The court recognized that such inferences are not permitted. *Id.* (citing *Wright*, 79 S.W.3d at 53.

In this case, Dr. Eskildsen states that had Nexion notified Mr. Wells' family and physician on September 19, 2013, Mr. Wells would have been evaluated in a hospital setting, which would have allowed Mr. Wells to receive intravenous fluids, bowel rest, and if necessary resection of the obstructed bowel. Dr. Eskildsen does not state that had Mr. Wells been evaluated in a hospital setting on September 19, 2013, his bowel would have been resected, or opine that a specific identified intervention on September 19, 2013 would have prevented Mr. Wells' bowel obstruction causing his death. Instead, Dr. Eskildsen merely concludes, had Mr. Wells been evaluated in a hospital setting on September 19, 2013, he would not have developed a severe bowel obstruction, perforation, infection, and sepsis and would not have died. Dr. Eskildsen fails to explain why evaluation and treatment on September 20, 2013 were insufficient or how evaluation on September 19, 2013 would have remedied the situation or led to a different outcome for Mr. Wells. We may not fill the gap and infer how evaluation and some potential treatment on September 19, 2013 would have remedied the situation or would have led to a better outcome for Mr. Wells. *See Jeffers*, 2013 WL 3487933, at \*4. Like the causation opinions in *Ortiz*, *Jeffers*, and *Klovenski*, we conclude Dr. Eskildsen's causation opinion concerning Nexion is conclusory.

### E. Lawson - Standard of Care

Dr. Eskildsen's report concerning Lawson states that Lawson was required to ensure:

1. Nexion's nursing program and staff met Mr. Wells medical needs; and

2. Mr. Wells was provided proper medical care and treatment.

### F. Lawson - Breach of the Standard of Care

Dr. Eskildsen states Lawson breached the standard of care by:

–10–

1.  Individually failing to properly evaluate Mr. Wells for signs and symptoms of bowel abnormalities and/or constipation and clearly documenting those evaluations; and

2.  Failing to ensure that the facility's nursing staff properly evaluated Mr. Wells for signs and symptoms of bowel abnormalities.

### G.  Lawson - Causation

As to a causal connection between Lawson's alleged breaches of the standards of care and Mr. Wells' death, Dr. Eskildsen reiterates his causation opinion concerning Nexion. For the reasons stated *supra*, Dr. Eskildsen's causation opinion concerning Lawson is conclusory.

We additionally note that Wells' claims against Lawson are based solely on her alleged individual negligence. Lawson did not examine Mr. Wells on September 19, 2013 and was not involved in the decision to transfer Mr. Wells to the hospital. Dr. Eskildsen indicates Lawson signed a Minimum Data Set, a standardized assessment tool of health status, for Mr. Wells on July 29, 2013. Dr. Eskildsen does not indicate what that assessment revealed and does not causally connect Lawson's assessment of Mr. Wells on July 29, 2013 to his death on September 28, 2013.

As to Lawson's administrative duties, Dr. Eskildsen was required to link Lawson's alleged failed management responsibilities to Mr. Wells' death. Dr. Eskildsen does link any alleged administrative negligence to Mr. Wells' death. *See Hollingsworth*, 353 S.W.3d at 518–19 (alleged breaches of hospital administrators not causally linked to injury sustained).

We conclude that Dr. Eskildsen's reports concerning Nexion and Lawson fail to provide a fair summary of the causal relationship between Nexion's and Lawson's purported failures to meet the applicable standards of care and Mr. Well's death. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Because Wells' expert reports omit the statutory element of causation, they do not fulfill the good faith effort requirement. Consequently, the trial court abused its discretion

in denying appellants' motion to dismiss Wells' claims against them.  We sustain appellants' first and second issues.

## C.      Attorney's Fees Under Section 74.351

In their third issue, appellants argue the trial court erred in failing to award appellants' attorney's fees because Dr. Eskildsen's reports failed to satisfy section 74.351 of the civil practice and remedies code.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351.  Section 74.351(b)(1) mandates that the trial court award the health care provider reasonable attorney's fees and costs of court if the claimant fails to serve an expert report that complies with section 74.351.  *Id*. § 74.351(b)(1).  Because we conclude Wells failed to serve expert reports that comply with section 74.351, we sustain appellants' third issue.

### CONCLUSION

We reverse the trial court's order denying appellants' motion to dismiss, render judgment dismissing appellees' claims against appellants with prejudice, and remand this case to the trial court to determine the reasonable attorney's fees and costs to be awarded to appellants pursuant to section 74.351(b)(1) of the civil practice and remedies code.

/DAVID J. SCHENCK/
DAVID J. SCHENCK

160018F.P05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NEXION HEALTH AT LANCASTER,
INC. D/B/A MILLBROOK HEALTHCARE
AND REHABILITATION CENTER AND
NANCY LAWSON, Appellants

No. 05-16-00018-CV       V.

GURTHA WELLS, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF
WILLIE WELLS, DECEASED, STEVE M.
WELLS AND TAMMIE J. WELLS,
Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-02533.
Opinion delivered by Justice Schenck.
Justices Francis and Fillmore participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellants NEXION HEALTH AT LANCASTER, INC. D/B/A MILLBROOK HEALTHCARE AND REHABILITATION CENTER AND NANCY LAWSON's motion to dismiss is **REVERSED** and judgment is **RENDERED** that appellees' claims against appellants are dismissed with prejudice. The case is remanded to the trial court to determine the reasonable attorney's fees and costs to be awarded to appellants pursuant to section 74.351(b)(1) of the civil practice and remedies code.

It is **ORDERED** that appellants NEXION HEALTH AT LANCASTER, INC. D/B/A MILLBROOK HEALTHCARE AND REHABILITATION CENTER AND NANCY LAWSON recover their costs of this appeal from appellees GURTHA WELLS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF WILLIE WELLS, DECEASED, STEVE M. WELLS AND TAMMIE J. WELLS.

Judgment entered July 25, 2016.