**AFFIRMED as MODIFIED and Opinion Filed February 9, 2022**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-21-00325-CV**

_____

**VETERINARY SPECIALISTS OF NORTH TEXAS, PLLC, AND DR. DEREK BURNEY, Appellants**

**V.**

**DR. GLEN KING, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-12568**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Garcia

On our own motion, we withdraw our opinion of January 18, 2022, and vacate the judgment of that date. The following is now the opinion of the Court.

This is an interlocutory appeal from a temporary injunction. The lawsuit is a dispute over ownership and control of appellant Veterinary Specialists of North Texas, PLLC (VSNT). Appellee Dr. Glen King obtained a temporary injunction that generally required appellants to recognize King as a managing member of VSNT. VSNT and its only other member, Dr. Derek Burney, appeal the temporary

injunction. We modify the injunction by striking provisions that require appellants to make certain payments to King or for King's benefit, and we affirm the injunction as modified.

## I. Background

Appellants sued King in September 2020. They allege the following facts in their live pleading:

VSNT is a domestic professional limited liability company that operates a specialty veterinary practice. Burney and King are both veterinarians, and they became VSNT's sole owners in 2014. VSNT is governed by an Amended Company Agreement ("Agreement"), which became effective in April 2015 and made Burney and King managers and 50% owners of VSNT. Over time, King lost the ability to competently treat VSNT's patients. King stopped treating patients in March 2020 and stopped coming to VSNT's animal treatment facility in April 2020. In July 2020, Burney invoked a "disability" provision in the Agreement and informed King that VSNT would buy him out as prescribed in the Agreement. King refused to cooperate with the buy-out.

After King's refusal, appellants sued King for breach of contract and declaratory judgment.

King answered and filed counterclaims against appellants for declaratory judgment. He also asserted counterclaims against Burney on theories including

breach of fiduciary duty, breach of contract, tortious interference, and fraud. King also applied for a temporary restraining order and a temporary injunction.

The trial court granted King's application for a temporary restraining order.

An associate judge later heard King's application for a temporary injunction and denied it.

King appealed that ruling to the presiding judge, who held a hearing, admitted a transcript of the hearing before the associate judge into evidence, and took additional evidence. The presiding judge then granted a temporary injunction that encompasses a number of orders generally directed at reinstating King as a member and manager of VSNT. The injunction sets the case for trial in March 2022.

Appellants timely perfected this interlocutory appeal.

## II.    Issues Presented

Appellants assert three issues on appeal, which we summarize as follows:

1.    The trial court erred by issuing the injunction because King failed to show a probability of success on the merits.

2.    The trial court erred by ordering appellants to make money payments to King and to third parties on his behalf.

3.    The trial court erred by ordering appellants to give King clinical access to clients.

## III.    Rules Governing Temporary Injunctions and Standard of Review on Appeal

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The party seeking a temporary injunction must

plead and prove three elements: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

The second element of a temporary injunction does not require the applicant to show that he will prevail at trial, nor does it require the trial court to evaluate the probability that the applicant will prevail at trial. *Kim v. Oh*, No. 05-19-00947-CV, 2020 WL 2315854, at *2 (Tex. App.—Dallas May 11, 2020, no pet.) (mem. op.). Rather, it requires the applicant to present enough evidence to raise a bona fide issue as to his ultimate right to relief. *Id.* Thus, the applicant must produce some evidence supporting every element of at least one valid legal theory. *Id.*

For purposes of the third element, an injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

We review a trial court's decision to grant a temporary injunction for abuse of discretion. *RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 274 (Tex. App.—Dallas 2019, no pet.). In the temporary-injunction context, a trial court abuses its discretion if it misapplies the law to established facts or if the evidence does not reasonably support the trial court's determination that the applicant satisfied the requisite elements. *See id.* at 274–75. We draw all legitimate inferences from the evidence in the light most favorable to the trial court's order. *Id.* at 274.

## IV. Analysis

**A. Issue One: Did the trial court abuse its discretion by ruling that King showed a probability of success on the merits?**

**1. The Parties' Arguments**

The parties focus on King's breach-of-contract claim. The elements of breach of contract are (1) a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach by the defendant, and (4) damages sustained by the plaintiff as a result of that breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

In the trial court, King argued that he was a VSNT manager and member under the Agreement and that appellants breached the Agreement by locking him out of his contractual rights and benefits.

On appeal, appellants do not dispute that they locked King out. Rather, they argue that they did not breach the Agreement because the evidence established that King was no longer a VSNT manager or member when they locked him out. Therefore, they conclude, King failed to show a probable right to continue as a VSNT member or manager, which is what the temporary injunction orders.

King responds that he proved facts under which he continues to be a VSNT member and manager, thus making the lockout a breach. He argues, among other things, that he and Burney modified the Agreement's provisions that appellants rely on.

Appellants reply that King adduced no evidence to support his modification theory or any other theory that would allow him avoid the Agreement's plain terms. Thus, according to appellants, there is no probability that King will be able to establish that he is still a manager and member of VSNT.

### 2.    Application of the Law to the Facts

The Agreement provides that Burney and King are VSNT's only members and its only managers. Appellants' argument that King ceased being a VSNT manager or member before the November 5, 2020 lockout runs as follows:

1.    The Agreement defines when a member shall be considered "disabled." The evidence established that, no later than the end of June 2020, King became "disabled" under the Agreement as written.

2.    Under the Agreement as written, King's disability automatically terminated his position as a VSNT manager and entitled VSNT to buy him out.

3.    On or around July 31, 2020, Burney invoked the disability and buy-out clauses. Under the Agreement as written, King ceased to be a VSNT member on August 31, 2020, when VSNT tendered consideration to King for his membership interest.

King does not directly dispute appellants' premises, contending instead that, for various reasons, appellants cannot enforce the Agreement as written. Nevertheless, we must evaluate the correctness of appellants' threshold argument because appellants bear the burden to show reversible error, regardless of King's arguments. *See Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987) ("[T]he burden is on a party appealing from a trial court judgment to show that the judgment

is erroneous in order to obtain a reversal."); *see also Schied v. Merritt*, No. 01-15-00466-CV, 2016 WL 3751619, at \*6 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.) ("An appellant cannot prevail on appeal merely because the appellee does not file a brief.").

Because we ultimately conclude that appellants' third premise is incorrect, we will assume without deciding that their first two premises are correct. That is, we assume without deciding that (1) by the end of June 2020, King was "disabled" under the terms of the Agreement as written and (2) King's disability automatically terminated his status as manager, again under the Agreement as written.

Appellants' third premise is that King ceased to be a VSNT member under the Agreement's terms and the undisputed facts. As appellants argue, the evidence showed that on or around July 31, 2020, Burney invoked the disability and buy-out clauses, and, on August 31, 2020, VSNT tendered consideration to King for his membership interest. But King testified, and the trial court was entitled to find, that (1) King refused to sign a document that would have conveyed his membership interest and (2) he has not cashed any of the checks VSNT has sent him as periodic installment payments for his membership interest.

Appellants assert that the foregoing facts establish that King ceased to be a VSNT member pursuant to Agreement § 8.4, which provides that if a member becomes disabled "the Company shall have the right, at the sole discretion and election of the other Member, to purchase the Impaired Member's Member Interest."

Other provisions explain how the purchase price will be determined in that event. But these provisions do not say that King immediately or automatically ceased to be a member once VSNT tendered consideration for his membership interest. Indeed, § 8.4(e) contains detailed provisions governing the closing of the purchase of a disabled member's interest. But King testified that he refused to sign a document conveying his membership interest, and we see no evidence that the conveyance ever took place.

Thus, appellants have not shown that the trial court abused its discretion by implicitly concluding that there was some evidence that (1) King remained a VSNT member and thus (2) appellants were breaching the Agreement by not affording him the rights and benefits of membership.

### 3. Conclusion

Because the record contains some evidence that King is still a VSNT member and that appellants have breached the Agreement, we overrule appellant's first issue.[1]

**B.** **Issue Two: Did the trial court abuse its discretion by ordering appellants to make monetary payments to King?**

Next, appellants attack three specific provisions of the injunction:

---

[1] Appellants' first issue argues only that the injunction is erroneous because the evidence established that King is neither a manager nor a member of VSNT. Appellants do not argue that the injunction is erroneous if the evidence established only that King is no longer a VSNT manager. Thus, we do not consider that possibility. *See State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989) (per curiam) (court of appeals may not raise arguments for reversal sua sponte).

- an order restraining appellants from "refusing to pay [King]'s manager compensation, salary, insurance, and benefits as they existed prior to the filing of" the lawsuit;

- an order requiring appellants to "take all steps necessary, including but not limited to making all policy payments, to ensure that [King]'s health insurance, life insurance, key man life insurance policy, disability insurance, long-term care insurance, and all other forms of insurance for [King] remain in full force and effect and do not lapse, and immediately reimburse [King] for any and all insurance premiums and/or policy payments [King] personally made to insurance carriers since November 5, 2020," and

- an order requiring appellants to "cause [VSNT] to make an equalization payment(s) to [King] in an amount equal to the attorneys' fees and costs paid by [VSNT] on behalf of Burney, individually, arising from, related to, or connected with this Lawsuit."

Appellants contend these orders were abuses of discretion because King did not show that (1) he faced extreme necessity or hardship or (2) an eventual judgment in damages would be a manifestly inadequate remedy.

## 1. Applicable Law

This issue concerns the third element of a temporary injunction, irreparable injury. *See Butnaru*, 84 S.W.3d at 204. As noted above, an injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard. *Id*. That is, an adequate remedy at law generally exists, and injunctive relief is generally improper, if any potential harm may be adequately cured by money damages. *RWI Constr*., 583 S.W.3d at 275. No adequate remedy at law exists if the applicant's damages are incapable of

calculation, if the defendant is insolvent, or if the defendant is otherwise incapable of responding in damages. *See Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 621 (Tex. App.—Dallas 2004, no pet.).

Additionally, when a temporary injunction is mandatory (i.e., requires conduct) rather than prohibitive (i.e., forbids conduct), the applicant must show that the "mandatory order is necessary to prevent irreparable injury or extreme hardship." *Retail Servs. WIS Corp. v. Crossmark, Inc.*, No. 05-20-00937-CV, 2021 WL 1747033, at *7 (Tex. App.—Dallas May 4, 2021, pet. denied) (mem. op.).

In *RWI Construction*, we addressed the irreparable-injury requirement in the context of an injunction that compelled the defendants to deposit funds in the court's registry for protection against loss or dissipation. 583 S.W.3d at 274. We recognized the general rule that a trial court may not issue a temporary injunction freezing the defendant's assets simply to assure the future satisfaction of a subsequent judgment. *Id.* at 275, 277. Exceptions to the rule exist if (1) there is a logical and justifiable connection between the claims alleged and the acts to be enjoined or (2) the plaintiff claims a specific contractual or equitable interest in the assets it seeks to freeze. *Id.* at 277. On the facts of the case, we affirmed the injunction as to specific funds that the plaintiff could trace as collateral for the loan it was suing on, but we reversed the injunction as to other funds that the trial court froze simply to assure their future availability to satisfy a judgment. *Id.* at 277–78; *see also Renovation Gurus, LLC v. Lake Point Assisted Living, LLC*, No. 05-19-00499-CV, 2020 WL 477135, at *3

(Tex. App.—Dallas Jan. 29, 2020, no pet.) (mem. op.) (applicant must identify an established right in the asset at issue; merely identifying a deposit of contested funds is insufficient).

Here, the injunction grants the applicant even more relief than the *RWI Construction* injunction did—the instant injunction does not merely freeze appellants' assets but actually requires appellants to pay money to King and for his benefit. Other courts of appeals have reversed temporary injunctions that required the respondent to pay money to the applicant. *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 401–02 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (reversing temporary injunction that required ongoing paychecks to applicant, in part for lack of irreparable injury or extreme hardship); *LeFaucheur v. Williams*, 807 S.W.2d 20, 23 (Tex. App.—Austin 1991, no writ) (reversing temporary injunction that required the respondent to pay money to the applicant because it was, in effect, a prejudgment garnishment imposed without proof of garnishment's elements).

We conclude that, at a minimum, King bore the burden of proving irreparable injury or extreme hardship to support the challenged orders. *See Retail Servs. WIS Corp.*, 2021 WL 1747033, at *7 (stating general rule for mandatory injunctions). Because the record does not support the orders under that test, we do not consider whether an even more stringent test should apply to orders requiring the respondent to pay money to or for the benefit of the applicant.

## 2. Applying the Law to the Facts

Appellants argue that the record contains no evidence that King will suffer an irreparable injury or extreme hardship if appellants are not compelled to make the challenged payments to him or to third parties for his benefit. We agree.

If an injury is compensable by money damages, it is, by definition, not irreparable. *Renovation Gurus*, 2020 WL 477135, at *2. Here, King's injuries in the form of his unpaid manager benefits, his unpaid member distributions, and his insurance premiums are injuries compensable by money damages. *See In re S. Foods Grp., LLC*, No. 05-13-01348-CV, 2013 WL 5888255, at *1 (Tex. App.—Dallas Oct. 31, 2013, orig. proceeding) (mem. op.) (holding, in TRO context, that lost health-insurance benefits could be compensated through damages). King cites no evidence that appellants are insolvent or otherwise incapable of responding in damages, and we see no such evidence in the record. *See Loye*, 156 S.W.3d at 621 ("A plaintiff does not have an adequate remedy at law if the defendant is insolvent."). Likewise, King cites no evidence that he will experience extreme hardship if appellants are not compelled to make these payments now, and we see no such evidence in the record. *See Retail Servs. WIS Corp.*, 2021 WL 1747033, at *7 (mandatory injunctions are proper only if "necessary to prevent irreparable injury or extreme hardship").

King attempts to defend the challenged orders by arguing that they are necessary to preserve the status quo pending trial on the merits. It is true that the purpose of a temporary injunction is to preserve the status quo of the litigation's

–12–

subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. But the injunction applicant still must show "a probable, imminent, and irreparable injury in the interim" to be entitled to injunctive relief. *See id*. Accordingly, we reject King's argument.

King also argues that the *RWI Construction* case supports the challenged orders because those orders are connected to the Agreement just as the $800,000 in *RWI Construction* was connected to the plaintiff's loan as its cash collateral. We disagree that there is a sufficient connection between the Agreement and King's claims on the one hand and the ordered payments on the other. As we later clarified, the *RWI Construction* rule requires the applicant to trace the specific assets in question and establish a right to those specific assets. *See Renovation Gurus*, 2020 WL 477135, at *3. King did not satisfy this requirement.

Finally, King argues that he will sustain irreparable injury if appellants are allowed to deny him the right to participate in VSNT's management. But this argument misses the mark. Appellants' second issue complains only about the orders compelling them to pay money—not about orders compelling them to allow King to participate in VSNT's management.

### 3.    Conclusion

Because the record does not show that the injunction's orders requiring appellants to pay money are necessary to remedy either an irreparable injury or extreme hardship, we sustain appellants' second issue.

**C. Issue Three: Did the trial court abuse its discretion by ordering that King be given clinical access to clients?**

In their final issue, appellants complain that the temporary injunction improperly alters the status quo in one respect. Specifically, they complain about parallel prohibitive and mandatory orders concerning King's "clinical access to clients." The prohibitive order forbids appellants from interfering with King's access to "clinical access to clients," and the mandatory order requires appellants to provide King with "clinical access to clients." Appellants construe "clients" to mean "veterinary patients," and they argue that the injunction changes the status quo because King voluntarily stopped treating veterinary patients in March 2020, before Burney invoked the disability clause.

King responds that appellants misinterpret the injunction. He contends that VSNT's "clients" are the pets' owners and not the pets themselves. Because the evidence showed that Burney and King agreed in early 2020 that King would engage in administrative and marketing duties, King concludes, the orders giving King access to VSNT's clients are consistent with the status quo.

Appellants reply that King's response reveals that the term "clients" is, at best, ambiguous, and they argue that ambiguity is not permitted in a temporary injunction. *See* TEX. R. CIV. P. 683 (injunction "shall be specific in terms" and "shall describe in reasonable detail . . . the act or acts sought to be restrained"). However, we may not consider arguments raised for the first time in a reply brief. *Sanchez v. Martin*,

378 S.W.3d 581, 590 (Tex. App.—Dallas 2012, no pet.). We express no opinion regarding appellants' ambiguity argument

In the temporary-injunction context, the "status quo" is the last, peaceable, non-contested status that preceded the pending controversy. *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016).

Here, the record shows that the status quo was the state of affairs existing before Burney invoked the disability clause on July 31, 2020. The question, then, is whether the record supports the trial court's implicit finding that King had clinical access to clients before that event, thus making that access part of the status quo.

We conclude that the record supports the conclusion that King had clinical access to clients before July 31, 2020. Although King testified that he did not provide veterinary services for VSNT's paying clients after March 2020, he also testified that, in March 2020, Burney represented to King that his duties should shift from clinical duties to managing and marketing. Although we see no evidence that King actually interacted with VSNT's clients after he stopped providing veterinary services, appellants do not point to anything, in the Agreement or otherwise, that forbade him from doing so. The trial court could reasonably conclude that managing and marketing activities, by their very nature, might involve interaction with

VSNT's clients. Thus, the trial court could reasonably conclude that King had access to VSNT's clients before July 31, 2020.[2]

We conclude that appellants have not shown that the trial court abused its discretion by ordering appellant to give King "clinical access to clients." Accordingly, we overrule appellants' third issue.

## V.    Disposition

We modify the temporary injunction by deleting the provisions that (i) restrain appellants from refusing to pay King his manager compensation, salary, insurance, and benefits, (ii) order appellants to pay King's insurance premiums and reimburse him for insurance premiums that he has paid, and (iii) order appellants to make "equalization payment(s)" based on Burney's attorney's fees. We affirm the temporary injunction as modified.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210325F.P05

---

[2] Although appellants argue in their reply brief that the phrase "clinical access to clients" makes no sense if "clients" is construed to mean the pets' owners rather than the pets themselves, the phrase can be reasonably construed to mean access to the pets' owners while they are at VSNT's clinic. *See Clinical*, THE NEW OXFORD AMERICAN DICTIONARY (2001) ("of or relating to a clinic").

–16–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

VETERINARY SPECIALISTS OF NORTH TEXAS, PLLC, AND DR. DEREK BURNEY, Appellants

No. 05-21-00325-CV          V.

DR. GLEN KING, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-20-12568. Opinion delivered by Justice Garcia. Justices Myers and Molberg participating.

We **WITHDRAW** our opinion and **VACATE** our judgment of January 18, 2022. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, the trial court's Temporary Injunction Order signed on April 16, 2021, is **MODIFIED** as follows:

- Paragraph (B) on page 4 of the Temporary Injunction Order is deleted;
- Paragraph (B) on page 5 of the Temporary Injunction Order is deleted; and
- Paragraph (D) on page 5 of the Temporary Injunction Order is deleted.

It is **ORDERED** that, as modified, the Temporary Injunction Order is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 9th day of February 2022.